(No. 13104.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE ALLEGRETTI *et al.* Plaintiffs in Error.

*Opinion filed February 18, 1920.*

1. CRIMINAL LAW—*venue may be proved by circumstantial evidence.* Venue may be proved by circumstantial evidence, and it is not necessary that someone testify, in terms, to the place where the offense was committed, for the purpose of establishing the venue.

2. SAME—*record need not recite, in terms, that indictment was returned in open court and what officers were present.* No set form of words is necessary for the record to show that the indictment was returned into open court, and it is not necessary that the record show the organization of the court by reciting what officers were present, but if the defendant desires to avail himself of the absence of any officer such absence should be made to appear affirmatively by a bill of exceptions. (*People* v. *Dennis,* 246 Ill. 559, followed.)

3. SAME—*verdict of guilty of robbery need not fix a definite term of imprisonment.* A verdict finding defendants guilty of the crime of robbery is not erroneous because it does not fix a definite term of imprisonment.

4. SAME—*when abstract must show all instructions given.* The refusal to give certain instructions cannot be considered as a matter affecting the judgment, where the abstract does not show that the instructions included therein were all the instructions given.

5. SAME—*when it is not error to strike words "the court instructs the jury," from instructions given.* It is not error to strike the words "the court instructs the jury" from all instructions given after the first, where the jury are instructed to consider all the instructions as one, "the same as if they were written upon one sheet of paper."

6. SAME—*when weapons taken from defendants' automobile are admissible.* Weapons taken from the defendants' automobile at the time they were arrested are admissible in evidence on their trial for robbery, where the complaining witness testifies he was held up by a man with a revolver, whom he identifies as one of the defendants and who drove away in an automobile with four other men, and where the police officer testifies there were five men in the automobile at the time he arrested the defendants, whose own testimony indicates that they knew the weapons, or some of them, were in the car.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. HENRY GUERIN, Judge, presiding.

MILES J. DEVINE, FRED F. WEINMAN, and A. J. MUF-FOLETTO, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The plaintiffs in error, Joe Allegretti, Bruno Grinelli and Thomas Aravaris, with two others, were indicted by the grand jury of Cook county, and on a trial in the criminal court of that county the plaintiffs in error were convicted on a charge of robbery and sentenced to imprisonment in the penitentiary. This writ of error was sued out to review that judgment.

Edward Weil, a chauffeur for the Yellow Cab Company, testified that on April 24, after midnight,—in his judgment between 1:20 and 1:30 o'clock in the morning,—while he was driving south in an auto of his employer on Normal boulevard, in Chicago, approaching Sixtieth street, he saw a closed, dark limousine standing at the corner of Sixtieth street, headed east; that as he came near the car a man standing by it stepped out into the street and said to him, "We are a little short of gasoline; can you take us to the nearest garage and get some?" that witness said, "Yes; step in;" that as the witness got out of the car the man addressed put a gun,—a black revolver, which he held in his right hand,—to his stomach and with his left hand took Weil's watch and chain and $15 in money from his coat pocket; that the man, speaking fairly good English though somewhat broken, told him to get back in the machine, which he did, and drove toward Sixty-third street, where he saw a police officer and reported the hold-up; that

the witness, in addition to the man who spoke to him, saw four other men in the machine at the time he was held up,—three on the rear seat and one in front; that after he was robbed they drove north on Normal boulevard three or four blocks, as far as the witness could see. The witness identified Aravaris at the police station as the man who held him up at the point of a revolver. All three of the plaintiffs in error were arrested later on the west side and taken to a near by police station some eight or more miles from the place where the witness testified he was held up. Weil saw the machine at the station and testified that in his judgment it was the same one used and occupied by the men who held him up. He testified that he did not recognize any of the plaintiffs in error at the police station, other than Aravaris.

Thomas Ward, a police officer, testified that while traveling his beat the night in question his duties took him to Chicago and Western avenues, in Chicago, along with officer Charles Preble, where he saw the three plaintiffs in error, with two others, in an automobile about two o'clock. Their machine was an olive green Hudson limousine and stood on Western avenue just north of Chicago avenue. Three men were in the rear and two in front, and as the witness walked near he noticed there was no rear license number and said to Preble that they had better see what the men were doing. As they walked past the machine plaintiff in error Grinelli stepped from the rear seat to the sidewalk. Officer Ward covered the five men with his revolver and officer Preble searched them, finding three loaded revolvers, a blackjack, a special police star and thirty-two rounds of extra ammunition. None of the men in the machine answered the officer's inquiry as to what they were doing. Grinelli later said he was trying to get some information relative to the other four. The officer asked him what kind of information, and Grinelli replied, "I think they are out on a racket and I am trying to get information for

some parties." This officer testified that the three guns and the cartridges shown him on the trial were the ones he took from the automobile. The large black gun the witness understood Aravaris to say belonged to him. He further testified that the men said at the station that they had made several trips out to Western avenue and Seventy-first street, Thirty-fifth street and Archer avenue and Forty-third street and Western avenue,—through there and back again; that Grinelli said that they had seen a Yellow Cab chauffeur at Fifty-fifth street and Western avenue and had followed him some distance west into Cicero; that at one place three of the parties had got out of the machine.

All of the plaintiffs in error testified substantially to the same effect as Grinelli, saying that they had gone south to Seventy-first street and Western avenue to meet some girls but did not find them there and came back to Harrison and Halsted streets to a restaurant, where they stayed an hour and a half and then went back to Seventy-first street and Western avenue, and failing to find the girls on this second trip they went from there to Archer avenue and Thirty-fifth street, where they had something to eat and drove from there to Western and Chicago avenues, reaching there at 1:30 o'clock. Grinelli testified that he noticed it was 1:30 when officer Preble came to the machine and ordered them out. They all denied holding up or assisting in holding up anyone, and stated that they had never seen the complaining witness until they saw him at the West Chicago avenue police station after they were arrested. They claimed, also, that the complaining witness stated at the police station that he was held up about 1:45 o'clock. Most of them denied that they had any knowledge of the weapons found in the machine by the police officers.

The record tends to show that neither of the plaintiffs in error had ever been arrested before, and there was also testimony as to the good reputation of Aravaris. We find some discussion, also, in the briefs as to an alleged confes-

sion by Grinelli, but it appears from the record that this so-called confession was never introduced in evidence and it does not appear in the record, therefore we cannot see that it has any bearing on the merits of this case.

Counsel for plaintiffs in error first argue that the venue was not properly proved on the trial. The complaining witness testified that the hold-up occurred in Chicago, Cook county. The record shows that the indictment was returned in Cook county, Illinois, and the trial took place in Chicago, Cook county, Illinois. Venue may be proved by circumstantial evidence. "It is not necessary that someone testify, in so many words, to the place where the offense was committed, but it is sufficient if the evidence, as a whole, leaves no reasonable doubt as to the act upon which the indictment is based having been committed at the place laid in the indictment. (*Porter* v. *People,* 158 Ill. 370.) 'The venue of an offense may be proven like any other fact in a criminal case. It need not be established by positive testimony nor in the words of the information, but if, from the facts appearing in evidence, the only rational conclusion which can be drawn is that the offense was committed in the county alleged, it is sufficient.'—*Weinecke* v. *State,* 34 Neb. 14." (*Weinberg* v. *People,* 208 Ill. 15; see, also, to the same effect, 13 Ency. of Evidence, 932, and authorities cited; *Sullivan* v. *People,* 122 Ill. 385.) The evidence shows that the offense occurred in Chicago, Cook county, and that the city is a large one; that the Yellow Cab Company is an Illinois corporation. We think it is clear from the entire record that the offense occurred in Cook county, Illinois, rather than Cook county in some other State.

It is further argued that the record does not affirmatively show that the criminal court of Cook county was properly organized for the transaction of legal business at the time the indictment was returned. The record on this point in this case is identical with the record in *People* v. *Dennis,* 246 Ill. 559, and it must be held here, as it was in

that case, that the record shows affirmatively that the indictment was returned in open court by the grand jury. This court in the recent case of *People* v. *Jones*, (*ante*, p. 52,) quoted with approval the law laid down in *People* v. *Dennis*, *supra*, and reached the same conclusion on an identical record.

Counsel also argue that the record does not show, at the time the indictment was returned into court, what judge, if any, was present or whether the clerk or sheriff was present. It has been held that "it was not necessary that the record should show the 'organization of the court,' if by that phrase is meant the names and presence of its various officers, and that the only thing that was important was that it should appear from the transcript that the court was actually in session," and if the plaintiff in error had desired to avail himself of the absence of any officer such absence should have been made to affirmatively appear by a bill of exceptions. *Lamb* v. *People*, 219 Ill. 399; *Yates* v. *People*, 38 id. 527.

Counsel further argue that the verdict of the jury fails to fix a definite term of imprisonment; that it was for an indefinite term, and therefore erroneous. No authorities are cited in support of this argument. The statute under which plaintiffs in error were tried permits a verdict to be rendered for an indefinite term, and we think the verdict in this respect is not subject to objection. *Herder* v. *People*, 209 Ill. 50; *People* v. *Joyce*, 246 id. 124.

Counsel for plaintiffs in error further object to numerous mistakes which they claim were made by the trial court in the giving and refusal of instructions. Plaintiffs in error are in no position, on this record, to urge any of the questions as to these instructions. The abstract presented by them on this writ of error does not show that the instructions given for the People and for plaintiffs in error were all the instructions that were given on the trial. The refusal of certain instructions cannot be considered as a mat-

291—24

ter affecting the judgment where the abstract does not show that the instructions included therein were all the instructions given at the trial. (*People* v. *Adams*, 289 Ill. 339.) It may not, however, be improper to say that we have examined the instructions complained of,—most of them growing out of the question as to alibi or reasonable doubt,—and are of the opinion that so far as they contain any law that was proper to be given to the jury, such law is found in other instructions that were given.

It is also proper to refer to the further question raised as to instructions, that it was error to strike out the words "the court instructs the jury," in all of the given instructions after the first. The words were contained in the first instruction, and the instructions given to the jury seem to have been read as a series. The fifteenth instruction given specifically stated: "The court instructs the jury that all instructions are to be considered as one whole instruction, the same as if they were written upon one sheet of paper." There can be no question on this record that the jury were not misled by striking out the words in question.

Counsel also earnestly argue that the evidence does not show plaintiffs in error guilty beyond a reasonable doubt. Plaintiff in error Aravaris was identified positively as the man who held up the complaining witness, and Weil also testified there were four other men in the machine with Aravaris at the time he was held up. The evidence shows that five men were in the machine when they were arrested by the police officer, and Aravaris was with them. There is no claim by any of the plaintiffs in error, or any testimony on their behalf, that either of the other four men was not with him during the time they were driving around the city the night in question.

The argument is also made that it was impossible for these to be the men that held up Weil because of the lack of time between the hold-up and the arrest. The testimony of the complaining witness was that he was held up between

1:20 and 1:30 in the morning. He was asked if he did not give the time at the police station as 1:45, and answered that he did not think so, but thought he stated he was held up between 1:20 and 1:30, the same as he testified on the trial. While it is true plaintiffs in error testified they were arrested before 2:00 o'clock, it is manifest, outside of Grinelli, who said he saw a clock and it was just after 1:30, that they were not at all definite as to the time when they were arrested, and the police officer's testimony was to the effect that they were arrested and taken to the police station about the time he made a call; that he made a call once an hour to headquarters and that this arrest was made immediately before he made the call at two o'clock. While it is true that all the plaintiffs in error testified positively that they did not hold up the complaining witness, that question, and the others raised as to the insufficiency of the evidence, were peculiarly questions for the jury to pass upon.

In this connection it is argued that plaintiffs in error were prejudiced by the trial court in not permitting the police officer to answer the question, on cross-examination, whether the complaining witness said at the police station that he was held up at 1:45 o'clock. He was not asked anything with reference to this on his direct examination by counsel for the State and therefore it was not strictly cross-examination. In any event, it would have been entirely proper to have put the police officer on the stand and ask him this question as their own witness. In view of the testimony on this record as to the time, neither of plaintiffs in error testifying positively except Grinelli, we cannot hold that plaintiffs in error were prejudiced by the failure of the police officer to answer this question on cross-examination.

It is further argued that it was improper to admit in evidence the pistols and police star taken from the automobile at the time of the arrest. We think they were clearly properly admissible as being in their possession in the automobile at the time of their arrest. The evidence of some of the

plaintiffs in error themselves indicated that they knew these weapons, or some of them, were in the automobile before they were arrested and while they were driving about the city of Chicago.

The evidence on the question of the guilt of plaintiffs in error is squarely contradictory, but we think it justified the jury in reaching the conclusion they did.

We find no reversible error in the record, and the judgment of the criminal court will be affirmed.

*Judgment affirmed.*