**WHITLEY et al. v. UNITED STATES.**
**No. 8757.**

Circuit Court of Appeals, Fifth Circuit.
Dec. 16, 1938.

Rehearing Denied Jan. 13, 1939.

Roy A. Scott, of Corpus Christi, Tex., for appellants.

Douglas W. McGregor, U. S. Atty., and Geo. P. Red, Asst. U. S. Atty., both of Houston, Tex.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Whitley and Hill were convicted on all counts of an indictment charging them jointly: In count 1, with conspiracy to use; in counts 9 to 10 inclusive with using, the mails to defraud; in counts 12 to 15, with unlawfully misapplying, and in count 16 with embezzling, funds of an insured bank; and Whitley alone in count 11 with making false entries on the books, and in counts 17 and 18, with embezzling funds, of an insured bank. On counts 1 to 10 Whitley was sentenced to pay a fine of $5000, and to serve two years in a reformatory, and on counts 11 to 18, to pay a fine of $5000 and to serve a term of five years, beginning at the end of the two year term.

Hill was sentenced: On counts 1 to 10 to pay a fine of $5000, and to serve five years in a reformatory, and on counts 12, 13, 14, 15, and 16, to pay a fine of $5000 and to serve two years, beginning at the end of the five year term.

Each appeals, assigning as error the refusal of his motion to direct a verdict, for want of evidence, as to each count of the indictment. The sentence as to Whitley on the first ten counts is not in excess of that which could have been imposed on him under any one of them, and the same thing is true as to the sentence imposed on him under the last eight counts. If Whitley is guilty on any one of the first ten, and on any one of the last eight, the judgment as to him must be affirmed.

As to Hill, his sentence on the first ten counts is within the sentence which could have been imposed on him under any of those counts, except No. 1 for conspiracy, and his sentence on the last four counts is less than the maximum which could have been imposed on him under any one of them. If the evidence is sufficient as to him, on any of the substantive counts 2 to 10, and on any of counts 12 to 16, the judgment must be affirmed as to him, also.

The general theory of the conspiracy and of the subsequent counts following, is that Hill and Whitley, with others named in the indictment, entered into a conspiracy to defraud, and did use the mails, in connection with the purchase and sale, and handling, of cotton. Descending to particulars, the scheme was to be carried out in three ways. One of them, dealt with in counts 2 to 6 inclusive, was that Hill was to procure farmers to sell him cotton on the faith of drafts, with bills of lading attached, payable at the Texas State Bank & Trust Co. of Corpus Christi, of which Whitley was cashier. The cotton was to be carried to

Corpus Christi in trucks other than those the owner of which had issued the bills of lading, and on arrival was to be sold and the proceeds deposited in the Bank which, on the pretense of Hill's large overdraft there, was through Whitley, a partner in the cotton company and a prime mover in the conspiracy, to refuse to pay the drafts and return them unpaid, but the proceeds of the cotton were to be credited to Hill's account. As a result of that scheme, it was alleged many farmers were defrauded, by having been induced to deliver their cotton, when it was planned that they were to receive, and they did receive, no pay for it. A second manifestation of the scheme, dealt with in counts 7 and 8, was the use of fraudulent samples in the sale of off-grade cotton, whereby the buyers of the cotton were defrauded.

The third form it took dealt with in counts 9 and 10, was through the use of forged cotton tickets to cause drafts to be paid behind which there was no cotton, only forged receipts.

The eleventh count charged Whitley alone with making a false entry in the D. W. Hill cotton account in the Bank, by entering therein a pretended deposit which was never made, but was wholly fictitious.

The charge under the misapplication counts 12 to 15 was, in short, that Hill and Whitley were, through the use of an account in the Bank in the name of T. C. Brown, to misuse the credit of the Bank by purchasing cotton with that credit, and misappropriating it and the proceeds. These counts dealt with cotton purchases which passed through the Brown account, but part of the money for which was not accounted for to the Bank.

The embezzlement count, No. 16, charged both Whitley and Hill with taking fifty cotton tickets from the Bank, selling the cotton, and appropriating the proceeds. The embezzlement counts, 17 and 18, charged Whitley alone with taking cotton tickets, or warehouse receipts from the Bank, selling the cotton they called for, and appropriating the money to his own use.

As to Hill, a careful examination of the evidence leaves us in no doubt that it was sufficient to support his conviction, and the sentences imposed upon him.

On the conspiracy count, there is against him not only the evidence as to the purchases of cotton, on drafts with bills of lading attached, and the defrauding of farmers by selling the cotton and turning the drafts down, but there is the highly damaging evidence directly implicating him in the sales of cotton on forged tickets, and in the looting of the Bank through the use of the T. C. Brown account.

As to counts 2 to 6, dealing with the claimed defrauding of farmers, by inducing them to sell cotton on drafts, with bills of lading attached, Hill vigorously insists that the evidence does not sustain his conviction. Admitting that the purchases were made as charged, that the drafts were turned down by the Bank, and the farmers were not paid, Hill insists that this was farthest from his intention. Testifying that Whitley had nothing to do with the cotton company, or with his banking arrangements, but that those were made with Garrett, the President of the Bank, he declared that he had a definite understanding with him that his drafts should be honored up to $20,000, and that, though he was overdrawn when the particular purchases were made, and the drafts sent out, payment of these drafts would not have extended him beyond his $20,000 limit. He testified too, that when the cotton was sold he immediately deposited the proceeds in the Bank, expecting and understanding that the sums thus deposited, would be used in paying the cotton drafts.

But to these claims the Government replies that Hill did not call Garrett or any one else in the Bank to support his claim as to the credit arrangements he had made, and that the case stands on that point upon his unsupported testimony. While to the undoubted fact that he did deposit the proceeds of the sales in the Bank, it replies that these proceeds went to pay off his debt to the Bank, and did not go to the farmers; that he has done nothing since to pay his debt, but on the contrary, he went into business again in the fall, under some kind of arrangement to use the name of T. C. Brown, and upon the express understanding with the Bank that his old indebtedness in the D. W. Hill cotton account should be considered paid and discharged, and this, by the very money which he had received from the sale of cotton, which, under his agreement with the farmers, he had no right to sell without paying the drafts to which the bills of lading for the cotton had been attached.

Thus, the Government points out, Hill's defense as to these counts depends entirely upon his credibility. If the jury believed his claim as to the arrangement he had

made, and that there was no intention to defraud, of course he made a good defense. If they did not, he stood convicted.

We agree with the Government that the jury was authorized to reject his testimony; indeed, in view of the whole case, his testimony on these counts appears lacking in credibility.

Upon the 7th and 8th counts, sales by false samples, while it stands, we think, confessed that such sales were made, the evidence connecting Hill criminally with these sales is quite meager. But neither this, nor the vigorous contentions he makes as to counts 4 to 6, will avail him, for the evidence, on counts 9 and 10, as to the sales of cotton on forged tickets, is, we think, wellnigh overwhelming against him, and standing alone, would support the sentence imposed upon him under the first ten counts.

As to the last five counts, 12 to 16, while the testimony is not as direct and strong against him as it is on counts 9 and 10, it is yet ample to support the verdict that he was a party to the looting of the Bank through the mysterious, if not wholly fictitious T. C. Brown account.

Against the admitted fact that Hill drew and was paid drafts upon a fictitious account, and that through that account the Bank sustained heavy losses, Hill offers only his unsupported testimony that the account was Garrett's, not his, and that he did not profit through it. The jury were entitled to disbelieve this entirely, or believing that it was Garrett's account, to believe that he and Garrett, perhaps in concert with others, worked together to despoil the Bank. As to Hill, the record shows no reversible error. The judgment is affirmed.

As to Whitley, the evidence is positive and uncontradicted that he made false entries in the D. W. Hill cotton account, as charged in count 11. The sentence of five years and $5000 imposed on him in one sentence on counts 11 to 18 together, must stand therefore, without regard to whether there is sufficient proof on the other counts, 12 to 18, to support the conviction on them. We think, however, that though circumstantial, and by no means conclusive, the evidence against Whitley on these counts is sufficient to support his conviction on them.

It is true that Hill testified that the T. C. Brown account was opened under an arrangement with Garrett, the President of the Bank, and that Whitley had nothing to do with it. It is undisputed, however, that Whitley handled this account, made entries from it to the old D. W. Hill account, handled drafts which went through the account, including those on the sales by false samples, and gave information as to cotton tickets or receipts belonging to it. It is undisputed, too, that when questioned about the Brown account by the State Bank Examiner, and by the representatives of the persons defrauded, on the sales by false samples, he gave false and evasive answers with regard to it, and finally, there was the heavy loss to the Bank in that account of which Whitley had charge, and with the irregular and fictitious character of which he was familiar.

Against all of these damaging circumstances Whitley offered no explanation, furnished no contrary proof, either by his own testimony, or by that of others in a position to know.

Here he takes the position that nothing was shown against him in connection with the transactions, except that, as cashier of the bank, he went about his duties as such, and all that the evidence shows that he did is as consistent with his innocence as with his guilt.

We do not think so. We think the circumstances disclosed in the record, standing unexplained, are quite sufficient to support the jury's verdict. Nounes v. United States, 5 Cir., 4 F.2d 833.

It remains only to consider whether the record supports the sentence and judgment, imposed on him on counts 1 to 10, of two years and $5000.

What we have said as to the sufficiency of the evidence on the substantive counts 12 to 18, applies, of course, with equal force to the conspiracy count; for the matters charged in those substantive counts are also charged as overt acts in the conspiracy count. But we think the evidence, though circumstantial, was sufficient also to support Whitley's conviction on the substantive counts 2 to 10.

To Whitley's insistence that nothing in the evidence connected him in a criminal way with the charges of counts 2 to 6, the Government replies that there was evidence that Whitley had told persons inquiring of him as to Hill's solvency, that though he was shaky, he thought his drafts would be good. There was evidence too, that after the drafts had been turned down, and their

drawers were looking for Whitley, he was seen secluded in a room connected with Hill's office, going over the books, and answering telephone calls; and too, there stands unexplained, his making false entries in the Hill account, his connection with the T. C. Brown account and with the fraudulent draft activities of Hill and his co-conspirators, Holmes and Willett, in connection with the forged tickets.

We agree that this evidence, standing unexplained, is sufficient to support the jury's verdict on these counts. But if it is not, we think there is ample evidence of Whitley's complicity in the drawing and the paying out of the proceeds of the fraudulent drafts on forged cotton tickets, and of his complicity in the handling of those drawn in the sales by false samples, to support the conviction on counts 7, 8, 9 and 10.

Nor can we agree with Whitley's contention, that if the evidence is sufficient to show that he was connected with the forged cotton ticket drafts, there is no proof that the mails were used in connection with that fraud, for the witness Daimwood testified positively that the drafts in question went through the mails.

We find no error in the judgment as to either Hill or Whitley. As to both, it is affirmed.