## UNITED STATES v. KARAVIAS.
### No. 9636.

United States Court of Appeals
Seventh Circuit.
Nov. 30, 1948.

Harry G. Fins, of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., and John A. Looby, Jr., and Nathan M. Cohen, Asst. U. S. Attys., all of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge and MINTON, Circuit Judge, and SWYGERT, District Judge.

SWYGERT, District Judge.

Stelios Sam Karavias was convicted by the District Court of falsely making, forging and counterfeiting currency of the United States government, of unlawfully possessing such counterfeit currency, and of conspiring to violate the federal counterfeiting statutes. He was given a sentence of three years. He appeals from this judgment and sentence, relying upon four grounds to obtain relief.

First, appellant contends that the government failed to prove venue. Second, he claims that he was not proven guilty beyond a reasonable doubt. Third, it is contended that the trial court erred in imposing a general sentence of three years after finding the defendant guilty on seven counts, one being the conspiracy count which carries a maximum sentence of two years. And fourth, the defendant contends that his application for probation was improperly denied by the trial court, without consideration of a presentence investigation. He says that this constitutes a violation of his rights under Rule 32(c) of the Federal Rules of Criminal Procedure, 28 U.S.C.A.

The appellant was indicted with four other individuals named Minas C. Aretos, John G. Brennan, Peter L. Klikas and Vito F. D'Agostino. One George Kanakes was indicted separately for certain related counterfeiting activities. All but Karavias pleaded guilty.

Briefly, the evidence shows that Brennan bought a multilith press in the summer of 1947; that in July of that year Karavias, Aretos, and Brennan were "cutting" and coloring counterfeit $10 federal reserve notes in the back room of Aretos' store. Early in August, 1947, Brennan and Aretos met in a tavern, where Brennan made a list of items to be procured for counterfeiting money. At a second meeting, Karavias joined the other two. He was told to get a certain type of paper. This he agreed to do. Brennan told him at that time that the paper was to be used for counterfeiting notes. In order to avoid suspicion, Brennan supplied Karavias with cards reading, "The Waukesha Sales Company." Thereafter the conspirators met, conversed, and planned the making of counterfeit money. Karavias was present at some of these meetings. Aretos, Brennan, and D'Agostino went to the latter's Indiana farm in August, where they attempted to manufacture counterfeit money. Klikas and Karavias remained in Chicago.

The production of counterfeit money on the D'Agostino farm proved to be unsuccessful. Subsequently, the gang's counterfeiting paraphernalia was moved to D'Agostino's home. After that, Karavias purchased cyan blue and laketine ink for their counterfeiting operations and Brennan and D'Agostino began making counterfeit money. Karavias saw the money and said that it was not properly made. Later Klikas and D'Agostino gave $31,000 in counterfeit notes to Aretos. After that, Aretos and Karavias delivered some of these notes to Kanakes. It was the latter who passed forty-eight of the $20 counterfeit notes. Many other conversations and happenings were related by the codefendants from the witness stand, all indicating that Karavias had participated in these criminal activities.

The indictment charged that the violations involved in this prosecution were com-

mitted at Chicago, in the Northern District of Illinois. As to the proof of venue, there was no direct evidence that the events and transactions constituting the alleged crimes actually took place in Chicago, Illinois. But there were many references in the testimony to various streets, buildings, and localities, without specific reference to the city or state in which they were situated, and there were at least two indirect references to the city of Chicago.

■ The general rule governing proof of venue is that there need be no positive testimony that the violation occurred at a specific place, but that it is sufficient if it can be concluded from the evidence as a whole that the act was committed at the place alleged in the indictment. George v. United States, 1942, 75 U.S.App.D.C. 197, 125 F.2d 559; People v. Allegretti, 1920, 291 Ill. 364, 126 N.E. 158; People v. Reynolds, 1944, 322 Ill.App. 300, 54 N.E.2d 850, and cases cited. And, as stated by this Court in Wallace v. United States, 7 Cir., 1917, 243 F. 300, 306, "venue, like any other fact, may be shown by evidence, direct, indirect or circumstantial."

■ The government witnesses, three of whom were appellant's codefendants, fixed the location of various happenings and transactions involved in this criminal activity by alluding to sundry streets and addresses. Halsted, Clark, Madison, Van-Buren and Congress Streets, Blue Island Avenue, Roosevelt Road and Pulaski Road were mentioned in the testimony. And one witness, Brennan, said that he and the appellant, in the course of carrying out their plans, went to "the Illinois Bell Telephone Company over at Wells and Washington." Another witness, Kanakes, testified that Aretos and Karavias had told him on October 20th that they had some "queer" money. On cross-examination he stated that prior to this meeting he had been fishing "out on the lake—right off of 12th Street." Also, the witness, Klikas, testified that the five conspirators met in a saloon and conversed about their counterfeiting plans; that the following day three of them, Brennan, Aretos and D'Agostino, went to the latter's farm in Indiana to begin their manufacture of counterfeit money. The witness said,

"Me and Steve (Karavias), we stay in Chicago."

The appellant argues that a court is not warranted in taking judicial notice of the location of a street, where the name of the city or town is not given. But the determination of this issue does not turn upon the question of judicial notice. Here, the locations of the illegal transactions were fixed by the mentioning of not one but many streets. It is unlikely that streets and intersections bearing all the particular names mentioned in the evidence in this case would be found in any other city, especially one near a lake. When that fact is considered with the indirect evidence relating to the Illinois Bell Telephone Company, together with reference to the appellant and a codefendant staying in Chicago while other codefendants went to Indiana, the inference was fully warranted that the crimes occurred at the place alleged in the indictment.

The defendant raised this venue question at the conclusion of the trial below, claiming that it had not been proven. In answer to a query from the trial judge on this matter, government counsel stated that two of the codefendants had fixed their addresses as in Chicago, Illinois, and that other testimony had related these addresses to the criminal activities alleged. In this, the record shows he was mistaken. But defense counsel did not challenge this statement at the time, and it would seem that by his silence he concurred in the mistaken assumption that the scene of the defendant's acts had positively been fixed within the jurisdiction and venue of the court. That the question of venue was not a contested issue in the trial is indicated by a remark appearing in defense counsel's opening statement. While denying the participation of Karavias in any of the criminal activities of his codefendants, the defense attorney observed that these "operations started here in Chicago and they moved the press to Schneider, Indiana."

■ As to appellant's second ground for reversal—that he was not proven guilty beyond a reasonable doubt—an examination of the record shows conclusively that there was substantial evidence to warrant the trial court's finding the appellant guilty.

Only two of appellant's arguments on this point need any discussion. He stresses the fact that the government's case is based largely on the testimony of accomplices who had previously pleaded guilty. But it is well established that a conviction may rest alone on the testimony of a codefendant or an accomplice. Heitler v. United States, 7 Cir., 1917, 244 F. 140; United States v. Riedel, 7 Cir., 1942, 126 F.2d 81. The appellant also says that the trial court disregarded the testimony of the character witnesses appearing on his behalf. But, of course, the relative weight to be given the evidence is entirely a determination for the trial court, and cannot be reviewed on appeal. United States v. Corso, 7 Cir., 1938, 100 F.2d 604; Dale v. United States, 7 Cir., 1933, 66 F.2d 666.

The appellant also brings into question the validity of the sentence imposed upon him. The substantive counts upon which he was convicted provide for a maximum sentence of fifteen years on each count. Title 18 United States Code Annotated, §§ 262, 265; New Title 18 United States Code Annotated, §§ 471, 472. The maximum sentence which can be imposed for conspiracy is two years. Title 18 United States Code Annotated, § 88; New Title 18 United States Code Annotated, § 371. A general sentence of three years was given the defendant.

The contention is made that this judgment and sentence are indefinite and invalid because a three-year sentence could not lawfully be imposed upon the conspiracy charge. Further, appellant claims that if the sentence were meant to apply only to the substantive counts, the trial court has not so specified, and therefore that he stands committed on a charge for which he actually received no sentence and upon which he is entitled to a discharge.

■ While it is the better practice in imposing sentence upon multiple counts of a criminal indictment to specify the term of imprisonment as to each count, rather than to impose a general sentence,[1] the error, if any, in imposing such a general sentence is not of sufficient importance to require

the case to be remanded to the district court for resentencing.

■ It has been held uniformly that a general sentence imposed upon conviction under an indictment in several counts will be upheld and the judgment affirmed if the punishment imposed does not exceed that prescribed for any one count and the evidence sufficiently sustains the conviction upon that count. Claassen v. United States, 1891, 142 U.S. 140, 146, 12 S.Ct. 169, 35 L.Ed. 966; Barry v. United States, 3 Cir., 1933, 65 F.2d 660, 661; Genna v. United States, 7 Cir., 1923, 293 F. 387; Whitley v. United States, 5 Cir., 1938, 100 F.2d 504. If such sentence must stand when one or more of the multiple counts are held invalid, it is no less proper to sustain a general sentence when the evidence supports the conviction on all counts, but the punishment exceeds the maximum permissible under one, but not all, of the counts of the indictment.

The appellant's final point requires an interpretation of Rule 32(c) of the Federal Rules of Criminal Procedure. The record discloses that after the appellant's conviction, his attorney asked leave to make application for probation. The request was denied summarily and sentence was imposed. The appellant contends that in so doing the trial court acted contrary to the mandatory requirements of Rule 32(c), which provides in part that "The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs." Federal Rules of Criminal Procedure, Rule 32(c), Title 18 United States Code Annotated.

■ The rule plainly indicates that the mandate is upon the probation officer and not upon the court. The court is not obliged to order a presentence report or to utilize the services of the probation department prior to passing sentence. Under the provisions of the applicable statute in effect before the adoption of the Federal Rules of Criminal Procedure, Title 18 United States Code Annotated, § 727, the

---

[1] See Moss v. United States, 6 Cir., 1943, 132 F.2d 875; Laing v. United States, 6 Cir., 1944, 145 F.2d 111.

probation officer was required to make only those investigations that were ordered by the court. According to the official notes to the Rules, the purpose of Subdivision (c) of Rule 32 was "to encourage and broaden the use of presentence investigations, which are now being utilized to good advantage in many cases." Thus, it would appear that the present rule was drafted for the purpose of encouraging the use of presentence investigations by setting in motion the machinery for such reports as to each defendant without specific direction from the court. Rather than waiting for the court to ask for a presentence investigation, the probation officer must now proceed to render a presentence report unless directed otherwise. If, in the exercise of judicial discretion, the trial judge determines that a presentence investigation is unnecessary and will not be of benefit in fixing a proper and just sentence, he may direct the probation officer not to act as otherwise required by the rule. Where, as in this case, the court proceeds to impose sentence following a trial and conviction, such action is tantamount to directing the probation service of the court to desist from making an investigation prior to the pronouncement of sentence.

The judgment is affirmed.