James CASS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20503.

United States Court of Appeals
Ninth Circuit.

April 27, 1966.

Harry E. Claiborne, Las Vegas, Nev.,
for appellant.

John W. Bonner, U. S. Atty., Robert S.
Linnell, Asst. U. S. Atty., Las Vegas,
Nev., for appellee.

Before MERRILL, Circuit Judge,
MADDEN, Judge of the Court of Claims,
and BROWNING, Circuit Judge.

MADDEN, Judge:

The appellant, herein called the defendant, was indicted and tried for three alleged violations of the federal narcotics laws. When the taking of the evidence was completed, the district judge, on the defendant's motion, rendered a judgment of acquittal on Count 1 of the indictment, which covered the first alleged violation. Counts 2 and 3 were submitted to the jury, which found the defendant guilty on each of these counts. The district court rendered judgment in accordance with the verdict, and the defendant has appealed from the judgment.

The defendant says that, taking the view of the evidence most favorable to the Government, it does not amount to a substantial basis for the verdict.

We will consider first the question whether certain evidence presented by the Government should have been admitted at all. If it should not have been admitted, it should not be considered in determining whether the verdict is supported by the evidence.

Count 1 of the indictment charged the defendant Cass and one Esposito with having, in August, 1964, received, concealed, sold and facilitated the transportation, concealment and sale of four pounds of marijuana in violation of Section 176a of Title 21 of the United States Code. The evidence as to this alleged violation of law will now be recited.

On August 19, 1964, federal narcotics agent Salmi, being in Las Vegas, Nevada, seeking evidence of violations of nar-

cotics laws, inquired of Esposito as to where he could buy narcotics. Esposito answered that "Jimmy" was in town with a quantity of marijuana and that Esposito could arrange, for that evening, a purchase of from two to four pounds. On that evening Salmi followed Esposito to a certain house in Las Vegas, Nevada, gave Esposito $300, and waited in his, Salmi's, automobile some 100 feet from the house. Two men came out of the house and drove away in an automobile. It was dark and Salmi could not recognize or otherwise identify either of the two. After a time the two men returned, dropped a package close to Esposito's car, which was in the driveway of the house into which Esposito had gone, and went into the house. Esposito came out of the house, picked up the package, and gave it to Salmi. It contained four pounds of marijuana. The house was the residence of the defendant Cass.

On August 22, 1964, agent Salmi saw Esposito place a telephone call to a certain number and heard him say, on the telephone, "Jimmy, this is Frankie." The telephone number called was that of the defendant Cass. Cass is frequently called "Jimmy."

The foregoing testimony as to what Esposito said and did was given by the narcotics agent Salmi, a witness for the Government.

We have recited all of the evidence introduced by the Government for the purpose of connecting the defendant Cass with the August 19 sale of four pounds of marijuana. The defendant introduced evidence, but none of it added anything to the Government's evidence about the August 19 transaction.

Esposito pleaded guilty before the trial, and was not a party in the trial. If he had been a defendant in the trial, his extra-judicial statements would of course have been admissible against himself, as statements of a party, usually called admissions. But, unless there was other evidence of his authority to speak for Cass, his extra-judicial statements would not have been admissible against Cass, and it would have been necessary for the trial court to so instruct the jury.

█ If Esposito did have authority to speak for Cass it must have been because they were co-conspirators in the August 19 violation of law, or joint participants in the transaction. But one cannot make of himself an authorized spokesman for another merely by extra-judicially saying that he is such. That would be the impossible feat of levitation by bootstraps. What we have, then, is the witness Salmi testifying that Esposito told him that Cass had told Esposito that Cass had marijuana which he was willing to sell. As far as concerns use against Cass, the testimony was inadmissible hearsay. The testimony of Salmi that Esposito had, four days after the August 19 transaction, telephoned to Cass' number and spoken familiarly to one "Jimmy," who very probably was Cass, is not, without more, evidence that he and Cass were engaged in a joint illegal activity.

The evidence which we have recounted having been introduced at Cass' trial on Count 1, the district court, as we have seen, rendered a judgment of acquittal on that count. In doing so, the court said:

> It is the opinion of the Court that there is insufficient evidence in the case to justify the jury in finding that Mr. James Cass had either actual or constructive possession of the 1,165 grams of marijuana referred to in the first count of the indictment at any time during the period covered by the indictment.

Since the trial court acquitted Cass on Count 1, the August 19 transaction, it may be wondered why our foregoing discussion is relevant. We now discuss the evidence as to Counts 2 and 3.

On September 16, 1964, at about 10:30 P.M., narcotics agent Salmi, hereinabove referred to, together with a Nevada deputy sheriff and several other officers, went to the house of the defendant Cass. The officers had a search warrant. They rapped on the door. Cass came to the door and opened it, and then, when he saw the officers, attempted to close it

The officers were able to enter, however. They handcuffed Cass and seated him on a divan in the living room. They entered the kitchen, saw one Ann Smith seated at a kitchen table, her hands on the table, in close proximity to an ash tray which contained one marijuana cigarette. The alleged possession of that cigarette by Cass is the subject of Count 3 of the indictment. The officers also found on the table, opposite to where Ann Smith was sitting, a plastic shampoo bottle which contained some six grams of marijuana. The marijuana in the bottle is the subject of Count 2 of Cass' indictment. The officers also observed a chair standing at such a distance from the table as a chair would be which had been occupied and pushed back when the occupant arose from it. The officers made a thorough search of the premises but found no other narcotics or contraband. Cass, having already been arrested, was taken to the county jail. Ann Smith was arrested and later charged in a Nevada court with illegal possession of the cigarette and the narcotics in the bottle. In the Nevada detective's report to his sheriff of the arrest of Ann Smith, he stated that the arrest was

> due to the discovery of what was believed to be marijuana in Smith's possession, subject was placed under arrest for possession of marijuana.

The report related to both the cigarette and the contents of the bottle. Government counsel, arguing to the jury for the conviction of Cass, said,

> I will concede that she [Ann Smith] did have possession. But I also submit that the defendant [Cass] had possession. * * * And it is the Government's position that here there was joint constructive possession of the marijuana by the defendant.

We think the impression which the state officers received at the time and place of their search is significant. That impression was that the cigarette and the six grams of marijuana in the bottle belonged to Ann Smith. It is not a legal impossibility, we suppose, for two persons to be tenants in common of the same lone cigarettes, whether its contents be tobacco or marijuana. That is the theory upon which the case was tried and the conviction of Cass obtained. But it is not unfair, we think, to suggest that such a legal arrangement would have no precedent. The same observation applies to the one-fifth ounce of marijuana in the bottle.

The foregoing discussion shows, we think that the evidence of possession by Cass of a share in the cigarette and in the small amount of loose marijuana was, to say the least, not strong. Indeed, comparing the facts with those of this court's 1964 case of Delgado v. United States, 327 F.2d 641, the evidence in the instant case is inadequate to support the judgment. In Delgado, Judge Duniway wrote, for the court:

> It is fundamental to our system of criminal law that guilt is individual. Here, that means that there must be sufficient evidence to support a finding, as to each defendant, that he or she had possession of the marijuana. Possession can be joint as well as several, "constructive" as well as "actual." It must also be knowing. But here it is pure speculation as to whether Rodriguez alone, or Delgado alone, or both of them, had possession. No doubt one of them did; perhaps both did. But proof that does not give rational basis for resolving the doubts necessarily present in the situation pictured to the jury in this case is not sufficient.

In Delgado there was the near certainty expressed by the court that one or the other of the two persons in the room possessed the narcotics, and the possibility that both possessed them. But that did not justify the jury in covering the uncertainty by a finding that both occupants possessed them. In the instant case, as we have seen, the Government has conceded that the person present in the premises, other than Cass, possessed the narcotics, and frankly, in view of the minuscule quantity of narcotics involved, the idea of their being

jointly owned and possessed borders on the absurd.

As we have seen earlier in this opinion, the court had admitted under Count 1 Salmi's testimony that Esposito had told him that "Jimmy" was in town and was ready and willing to sell large quantities of marijuana. Then the court, at the close of all the evidence, in acquitting Cass on Count 1 decided that the evidence did not show that Cass had anything to do with the sale of the four pounds of marijuana by Esposito on August 19. The court then instructed the jury that it would have no occasion to consider the evidence of the August 19 transaction in connection with Count 1, since Count 1 had been disposed of, but further instructed the jury as follows:

> The evidence which has been received with respect to the first count of the indictment has not been stricken. * * * [That evidence] is nevertheless relevant and material evidence in the case. * * *

> The Court is not advising you what, if any, weight you should give to the evidence relating to the occurrences on August 20th [sic] and August 19th, 1964, insofar as such evidence may bear upon the finding that you may make with regard to whether or not the defendant James Cass had possession of the marijuana which was found in the house on September 16th at the time of the search. The Court merely states that the jury may give the evidence relating to the occurrences on August 19th and 20th such weight as the jury thinks it deserves in connection with the other evidence in the case in reaching a conclusion as to whether or not the defendant James Cass did have possession of the marijuana on September 16th under the second and third counts of the indictment. * *

■ In our opinion, this instruction clearly authorized the jury to consider and give weight to the evidence relating to the August transaction about the sale of four pounds of marijuana. This was error. The court instead should have instructed the jury to disregard all such evidence.

The remaining question is whether the error was prejudicial. The hearsay evidence about the August transaction was, once admitted, as it was, and believed, as the court's instruction to the jury permitted it to be, direct, strong and damaging. It made the defendant Cass a large operator in the illegal marijuana traffic and might well have completely obscured the only proper issue in the case, which was whether Cass owned a fractional interest in a cigarette or in one-fifth of an ounce of loose marijuana. We think we would be blinding ourselves to reality if we concluded that the error described had, in all probability, no influence upon the jury in arriving at its verdict.

The judgment of the district court on Counts 2 and 3 of the indictment is reversed, and the case is remanded to that court for a new trial.