**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John A. MENDELL, Defendant-Appellant.**

**No. 18535.**

United States Court of Appeals,
Seventh Circuit.

June 29, 1971.

Rehearing Denied Aug. 30, 1971.

Stevens, Circuit Judge, concurred and filed opinion.

Julius Lucius Echeles, Chicago, Ill., for appellant.

William J. Bauer, U. S. Atty., Thomas G. Dent, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, CUMMINGS, and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

After a bench trial, defendant was found guilty on Count 2 of an indictment charging various narcotics offenses and was sentenced to five years in prison.[1] Count 2 charged that defendant and Robert French unlawfully received

1. Defendant was acquitted on Counts 1, 3 and 4; Counts 5 and 6 had been dismissed by the Government at the opening of the trial.

15.301 grams of imported heroin in violation of 21 U.S.C. § 174.[2]

## I

Defendant first objects that the district court should have granted his motion in arrest of judgment at the close of the Government's case because venue was not proven. Relying upon United States v. Jones, 174 F.2d 746 (7th Cir. 1949), defendant argues that the lack of any explicit reference to Chicago, Illinois, as the location of the transactions rendered the evidence insufficient.

■■ Venue need not be shown by direct evidence, but may be proven by the evidence as a whole or by circumstantial evidence. Venue is established where the testimony justifies the reasonable inference that the violation occurred at the place alleged in the indictment. United States v. Budge, 359 F.2d 732, 734 (7th Cir. 1966); United States v. Chiarelli, 192 F.2d 528, 532 (7th Cir. 1951), certiorari denied, 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683; United States v. Karavias, 170 F.2d 968 (7th Cir. 1948).

■ We agree with the district court that the testimony of the Government's witnesses sufficiently proved venue notwithstanding the omission of any specific indication of the city in which the events took place. The record is replete with testimony identifying streets, intersections, major thoroughfares, business establishments, and parks.[3] Both in volume and distinctiveness, this evidence was tantamount to a testimonial declaration that the acts took place in Chicago. United States v. Budge, 359 F.2d 732, 734 (7th Cir. 1966); Walker v. United States, 397 F.2d 789 (5th Cir. 1968), certiorari denied, 394 U.S. 962, 89 S.Ct. 1311, 22 L.Ed.2d 563; Weaver v. United States, 298 F.2d 496, 498 (5th Cir. 1962);

Dean v. United States, 246 F.2d 335, 337 (8th Cir. 1957); United States v. Lukenbill, 421 F.2d 849 (9th Cir. 1970).

■ Nor does the opinion of this Court in United States v. Jones, 174 F.2d 746 (7th Cir. 1949), require a different result. The Court there observed that "venue will not be inferred from proof that the acts constituting the crime were committed upon certain streets, where the city within which the streets are located is not identified. The court will not take judicial notice that the streets referred to in the evidence are in any certain town." 174 F.2d at p. 749. Defendant suggests that this language forbids any judicial notice whatsoever of the geographic location of particular streets as proof of venue. We decline to give such sweeping import to these remarks.

■■ Judicial notice may be taken of matters which are either so commonly known within the community as to be indisputable among reasonable men, or which are capable of certain verification through recourse to reliable authority. See McCormick on Evidence, §§ 324–325 (1954); Rule 201(b), Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates (March 1971) (51 F.R.D. 315, 331). Among the matters long recognized as proper subjects for judicial notice are a wide range of geographic facts, including location. The determination of geographic location of a street or other landmark mentioned in testimony involves two steps. First, judicial notice may be taken that the city, county, or other geographical area contains a street of that name. The second step involves the inference that the street mentioned is actually that located within the specified boundaries. The reasonableness of the inference as to geographic

2. French was not a defendant at the bench trial because he had previously pleaded guilty and received five-year concurrent sentences on the six counts of the indictment.

3. Although the Government seeks to rely on three exhibits to show that the heroin

here had been purchased in Chicago, these exhibits were never received in evidence. Therefore, defendants' motion to strike the reference thereto at p. 14 and in the Appendix of the Government's brief is granted.

location from circumstantial evidence such as streets, landmarks, and the like, is a matter of degree. Each case must be judged on its own facts.

■ Where streets or other landmarks are few in number or commonly named, doubt as to their exact location remains, and the court may be compelled to withhold notice of that fact. Thus in *Jones*, this Court refused to place the "several" streets mentioned in testimony within the City of Chicago. That holding should not, however, be extrapolated into blanket prohibition of judicial notice that streets are in a certain city. Where, as here, the landmarks are sufficiently numerous and notorious, the inference that they are located within a particular municipality within the jurisdiction of the court may be properly made. Here the circumstantial evidence was sufficiently extensive and characteristic of Chicago to warrant the inference that the criminal acts occurred in the Northern District of Illinois.

## II

■ Defendant contends that the district judge improperly admitted hearsay statements made by co-defendant French to narcotics agent John J. Gallagher, relating communications between defendant and French. In receiving this evidence, the district judge concluded that a "connection" had been shown between defendant and French, so that the statements were receivable under the joint venture exception to the hearsay rule. See United States v. Jones, 438 F.2d 461, 466 (7th Cir. 1971). Defendant urges that French's revelations to Gallagher cannot be used to show the joint venture because that would involve "the impossible feat of levitation by bootstraps." Cass v. United States, 361 F.2d 409, 410 (9th Cir. 1966). We disagree.

As in the recent *Jones* case, there was ample independent evidence that defendant and French were engaged in a joint venture in the sale of heroin. Agents Gallagher and Rankin testified to their observation of defendant's and French's suspicious activities together on two nighttime occasions on August 7. Agent Nolan also testified to overhearing an extremely damaging conversation between them in a hotdog stand about 11:00 p. m. that same evening. These conversations harmonized with subsequent actions of French and defendant that were observed still later that night. Consequently, apart from any statements of French to Gallagher, the Government sufficiently showed a joint venture between defendant and French, so that the district court was entitled to consider French's narration to Gallagher of conversations between French and the defendant.[4]

## III

■ Defendant's final point is that the evidence did not show that he possessed the 15 grams of heroin in question. It is well settled that circumstantial evidence is sufficient to support convictions of narcotics offenses. United States v. Spencer, 415 F.2d 1301, 1303 (7th Cir. 1969); United States v. Lawler, 413 F.2d 622 (7th Cir. 1969). We conclude that the trier of facts was justified in inferring that the two packages passed by defendant to French contained this heroin, as shown by the following testimonial highlights:

Agent Gallagher testified that he met co-defendant French about 7:15 p. m. on August 7 at 4015 West North Avenue. French told Gallagher "the people" were waiting around the corner with a sample of heroin. Gallagher told French to obtain it. French was then observed walking in the vicinity with defendant, who reached inside his sport shirt and withdrew something which he handed to French. In a quarter of an hour or so, French returned and handed Gallagher a small plastic wrapped container containing 2.625 grams of a heroin hydrochloride mixture. Gallagher paid French

4. It is noteworthy that the trier of facts did not deem the weight of that evidence to be "very great." As he concluded,

"I don't think leaving it out would destroy the case in fact."

$100 for the sample. French told Gallagher "the people" were waiting for the $100 and that he would immediately go and order "the ounce" requested by Gallagher.

Soon afterwards, French and defendant were again seen conversing nearby. French then rejoined Gallagher in his car and told him "the people" wouldn't get the ounce of heroin for Gallagher without $300. After Gallagher made a telephone call (apparently to receive authorization to pay this sum), French told him to drive to the vicinity of LeMoyne Street and Pulaski Road, where Gallagher handed French the $300. French walked to the corner of LeMoyne and Keystone Avenue where he gave defendant a quantity of money. He then returned to Gallagher's car and informed him they should have the heroin within an hour, and that "Johnny" had gone to pick it up. French added that "Johnny" was reliable and would be able to supply Gallagher with anywhere up to 20–30 ounces of heroin at a time, but that "Johnny" wanted one-third of the money before delivery. French said he had done business with him in the past.

Gallagher and French remained together until 10:15 p. m. Fifteen minutes later, Gallagher observed French conversing with defendant at LeMoyne and Pulaski. Defendant handed something to French who placed it in his right pants pocket. Immediately thereafter French rejoined Gallagher at his car. French reached in the same pocket for a piece of newspaper containing a plastic-wrapped package containing 12.515 grams of a heroin hydrochloride mixture. He handed this to Gallagher, who paid him an additional $600 for it.

At 11:00 p. m., agent Nolan overheard French and defendant conversing in a hotdog stand at the corner of Pulaski and Grand Avenue. French asked defendant why it took so long to get the "stuff," and defendant replied that he had to go to Blue Island for it. Defendant remarked that he did not want to be paid in big bills because they aroused suspicion. French agreed that all future deals would be in smaller denominations. Defendant said "fine" and then indicated that he would be able to supply all French needed "from here on." After this transaction was completed, additional testimony was adduced linking French and defendant as to Gallagher's claim that the second package was light and as to his request for additional heroin.

In our view, this evidence sufficed to support the district judge's finding that defendant twice supplied French with the heroin he in turn transferred to agent Gallagher. Cf. United States v. Dichiarinte, 385 F.2d 333, 340 (7th Cir. 1967), certiorari denied sub nom. Mastro v. United States, 390 U.S. 945, 88 S.Ct. 1029, 19 L.Ed.2d 1133.

Affirmed.

STEVENS, Circuit Judge (concurring).

In my opinion, United States v. Jones, 174 F.2d 746 (7th Cir. 1949), is not distinguishable and should be expressly overruled.