**Clovis Carl GREEN, Jr.,**
**Plaintiff-Appellant,**

v.

**WARDEN, U.S. PENITENTIARY,**
**Defendant-Appellee.**

No. 81–3067.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 17, 1983.

Decided Jan. 28, 1983.

Certiorari Denied May 31, 1983.

See 103 S.Ct. 2436.

Jerold S. Solovy, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Earl Kaplan, Dept. of Justice, Crim. Div., Washington, D.C., for defendant-appellee.

Before CUMMINGS, Chief Judge, and PELL and BAUER, Circuit Judges.

CUMMINGS, Chief Judge.

Much has recently been said and written about the proliferation of frivolous lawsuits filed by state and federal prisoners. Today, in considering the instant appeal, we must also address a request by the Government to curb the litigiousness of a particularly notorious contributor to the backlog of this and other circuits, Clovis Carl Green, Jr.

I.

Before we review the procedural history of the immediate case, it is helpful to note the following background information. Clovis Carl Green, Jr., is the founder and sole "reverend" of the Human Awareness Universal Life Church, formerly known as the Church of the New Song of Universal Life. Green has also spent the past several years in various penitentiaries located throughout the United States. As the leader of the church, Green is the only individual recognized to speak on behalf of his "congregation." Among the tenets of the

church are that inmate-members should grow beards and long hair (even if by doing so it conflicts with prison regulations) and have regular conjugal visits in prison. The church advocates Saturday religious services which are to be attended by all church members, as well as by family and friends. The church in addition seeks to distribute its own newspaper entitled *Truth* to fellow inmates. Legal recognition of the church, by the Internal Revenue Service or other official entities, has apparently yet to be received. See *In re Green*, 215 U.S.App. D.C. 393, 669 F.2d 779, 781 n. 5 (1981). See also *Green v. White*, 589 F.2d 378 (8th Cir.), certiorari denied, 441 U.S. 925, 99 S.Ct. 2038, 60 L.Ed.2d 400 (1979) (Green unsuccessfully sought declaration that his church is a legitimate religion).

As the sole spokesman for the "church," Green has initiated countless lawsuits in recent years.[1] In fact, Green has been described by one court as the "most prolific prisoner litigant in recorded history." See *In re Green, supra,* 669 F.2d at 781. Green's causes of action have been well chronicled; one recent opinion lists Green's filings as numbering somewhere between 600 and 700 complaints in federal and state courts. *Id.*[2] The majority of Green's voluminous litigation has revolved around the church and its activities, but Green has also brought suits over a variety of other matters, including disciplinary actions against him by prison officials, transfers to other institutions, and various conditions of confinement. See *Green v. Arnold,* 512 F.Supp. 650, 651 (W.D.Texas 1981). In response to Green's attack on the judicial system, three circuit courts and one district court have taken the extraordinary steps of entering injunctions to halt Green's blatant

---

**1.** This is consistent with his church's "policy" of encouraging inmates to file writs and lawsuits. See *Green v. Arnold,* 512 F.Supp. 650, 651 n. 6 (W.D. Texas 1981). Green's apparent goal is to "prevent the federal court[s] from being able to process its docket" and thereby secure an early release from prison in exchange for the dropping of his multitude of lawsuits. *Green v. Camper,* 477 F.Supp. 758, 770–771 (W.D.Mo.1979).

**2.** Also, in *Green v. Camper,* 477 F.Supp. 758 (W.D.Mo.1979), District Judge Hunter compiled an amazing list of over 500 cases brought by Green. See also *Green v. Arnold,* 512 F.Supp. 650 (W.D.Texas 1981); *Green v. Garrott,* 71 F.R.D. 680 (W.D.Mo.1976). In addition, at last count, Green has prompted twenty-six published opinions in the Federal Reporter and Federal Supplement.

abuse of the legal system. See *In re Green, supra; Green v. Carlson,* 649 F.2d 285 (5th Cir.1981); *Green v. White,* 616 F.2d 1054 (8th Cir.1980); *Green v. Wyrick,* 428 F.Supp. 732 (W.D.Mo.1976).[3]

In 1980, Green began to apply his indefatigable skills to the courts of this circuit. Here, in our Court alone, Green has recently brought 13 appeals, in addition to the one presented here, and has had twelve of them dismissed mostly for being either vexatious, malicious, frivolous, or not in good faith.[4]

Green commenced the present action in August 1980. In his complaint Green presented the allegations that prison officials had violated his freedom of religion and that his right of access to the courts had been impeded. Green sought leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. On September 19, 1980, the district court denied Green leave to proceed *in forma pauperis* and dismissed Green's complaint on alternative grounds. First construing Green's complaint as against the prison officials in their official capacity, the district court ruled that Green had failed to exhaust his administrative remedies as required by 28 U.S.C. § 2675. Alternatively, construing the action as a suit against the officers in their unofficial capacity, the district court found that Green had failed to satisfy the $10,000 jurisdictional amount required by 28 U.S.C. § 1331. Judgment was entered on September 26, 1980.

On October 6, 1980, Green moved for a reconsideration of judgment and in the alternative for leave to appeal *in forma pauperis.* No notice of appeal was filed at this time. The district court denied this motion on October 13, 1980.

In July 1981, Green moved for reconsideration of the district court's order of October 13, 1980, leave to appeal *in forma pauperis,* permission to submit additional arguments, and an "Order to Show Cause."[5] The district court denied Green's motion on September 22, 1981.

Finally, three months later, and well over a year after the district court's original judgment, Green filed a "notice of appeal and a motion to appeal *in forma pauperis* out of time." This motion was filed with the district court on December 23, 1981. An identical motion was filed with this Court on March 10, 1982. In his motion and notice of appeal, Green attempted to explain his failure to timely appeal the district court's order of September 26, 1980 as due to "the constant lying by the clerk of the court."[6] Green also accused the district court of "intentionally" lying in its orders and rulings. On March 10, 1982, the district court denied the defendant's motion for

---

3. Green argues that the injunctions entered by the Fifth, Eighth, and District of Columbia Circuits were improperly entered. We have no authority, however, to review or otherwise grant relief from the injunctions entered in those circuits. Our responsibility is merely to consider the proposed injunction in the context of the immediate case.

4. Appeal Nos. 82–1150, 81–2684, 81–2631, and 81–2334 were dismissed as "vexatious and malicious." Appeal No. 82–1143 was dismissed as "malicious" and Appeal Nos. 81–2090 and 81–1922 were dismissed as "vexatious and not in good faith." Appeal No. 81–2322 was dismissed as "frivolous and vexatious," while Appeal No. 81–1513 was dismissed as "frivolous." Appeal Nos. 82–1135 and 81–1436 were dismissed without comment. Finally, we note that in Appeal No. 80–8048, this Court dismissed Green's appeal as "frivolous" and cautioned Green that we would not hesitate to exercise our power to curtail future abuse of

process. This warning has obviously gone unheeded.

5. In his motion Green claimed that the district court had acted improperly and illegally. In support of this claim, Green argued that: "The instant Plaintiff has filed many court actions for money damages against federal prison officials in other federal courts, and no other federal judge has ruled in any similar manner as the ruling by this court."

6. Green also argues that his October 6, 1980, motion for leave to appeal *in forma pauperis* was intended to act as the required notice of appeal and should therefore be accorded the same force and effect as a timely notice of appeal. We disagree. Green's subsequent filings in the district court easily refute this argument and indicate that it was Green's apparent intention in the months following the entry of the district court's judgment to convince the district court of both the perceived error of its decision as well as the merits of Green's case.

leave to appeal and leave to appeal *in forma pauperis,* saying:

> The grounds offered for leave to file out of time, alleged untruths by this Court and its Clerk, are scandalous and impertinent allegations suitable for a motion to strike. In fact, as the file history reflects, this Court and its Clerk have complied with most of plaintiff's requests though some were clearly outrageous, and would have required multitudes of copying at the public expense ... The Court has always truthfully responded to plaintiff. The fact is that plaintiff simply failed to timely perfect his appeal. There is no basis in law or in fact for permitting him to file out of time.

The district court went on to suggest that it and the Court of Appeals should consider some type of injunction prohibiting Green from further harassing the courts of this circuit.

In response to Green's appeal, this Court directed the respondent Warden to submit a memorandum concerning the "appropriateness of this Court entering an order enjoining Clovis Carl Green from filing any materials in any appeal in this Court" and also provided that the "Government may suggest that an injunction's scope be limited to issues involving the Human Awareness Universal Life Church."[7] The Warden has accordingly proposed that we enter the following injunction:

> Clovis Carl Green, Jr. may not file any civil action in the district court of this Circuit or any petition or appeal with this Court without first obtaining leave of the appropriate Court. In seeking leave of Court, Mr. Green must certify that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal court. Upon failure to certify or upon false certification, petitioner may be found in contempt of court and punished accordingly.

In response, Green's court-appointed counsel submitted memoranda arguing that (1) this Court lacks subject matter jurisdic-

tion to issue an original injunction; (2) an appellate court may not make the factual findings necessary to support the proposed injunction; and (3) the proposed injunction denies Green his constitutionally protected right of access to the courts.

## II.

The first issue we shall address is Green's argument that this Court does not have the authority to issue the requested injunction as an original matter. Green argues that entry of the requested injunction, without having the imprimatur of a district court upon it, would not be consistent with this Court's appellate function. The Government responds that this Court has the authority to issue the injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), as an action in furtherance of our supervisory authority over the courts of this circuit.

Section 1651(a) of Title 28, otherwise known as the All Writs Act, states that:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a). As this Court has recently noted, the All Writs Act confers a broad grant of authority to federal courts. See *United States v. Kimberlin,* 675 F.2d 866, 869 (7th Cir.1982). The purpose behind the Act is to assure the various federal courts that they may have the power to issue any appropriate writs and orders which are auxiliary in nature in order to aid their respective jurisdiction. *In re Previn,* 204 F.2d 417, 418 (1st Cir.1953). The intent of the Act is to effectuate established jurisdiction, not to enlarge it. See *Plum Creek Lumber Co. v. Hutton,* 608 F.2d 1283, 1289 (9th Cir.1979); *State Committee to Stop Sanguine v. Laird,* 317 F.Supp. 664, 665 (W.D.Wis.1970). The exercise of this power is appropriate both in cases where jurisdic-

---

**7.** Also, in our order dated April 6, 1982, we denied Green leave to appeal *in forma pauperis*

from the order of the district court. No docketing fee has since been paid to the clerk's office.

tion of the Court of Appeals has already attached as well as cases where the Court of Appeals has merely potential appellate jurisdiction. *In re Previn, supra,* 204 F.2d at 418. Indeed, while the Act does not confer upon a court the authority to act as a roving tribunal ferreting out error wherever it thinks it exists, the All Writs Act does give a court the inherent power "to effectuate what seems . . . to be the manifest ends of justice." *Texaco, Inc. v. Chandler,* 354 F.2d 655, 657 (10th Cir.1965), certiorari denied, 383 U.S. 936, 86 S.Ct. 1066, 15 L.Ed.2d 853 (1966).

There is also little dispute concerning the supervisory power this Court may exert both over its own docket as well as that of the district courts within our geographical area. The Supreme Court has noted in broad language that "supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system." *La Buy v. Howes Leather Company,* 352 U.S. 249, 259–260, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957). This pronouncement has been reaffirmed by every court of appeals that has addressed the issue, including our own. See *Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 711 n. 5 (7th Cir.1979), certiorari denied, 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980). Judicial supervision of the federal courts implies the responsibility and duty to act whenever necessary to obviate problems which affect the proper administration of justice.

Counsel for Green point to the case *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.,* 543 F.2d 1106 (5th Cir.1976), certiorari denied, 431 U.S. 938, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977), in support of Green's argument that this Court may not, as an original matter, grant the proposed injunction. In that case, the National Screen Service Corporation, in defending an appeal later described by the court as "frivolous," requested an injunction prohibiting future litigation against it by the plaintiff-appellant, Exhibitors Poster Exchange, Inc. The Fifth Circuit denied the request on the grounds that (1) there existed no appealable decision of the district court, and (2) the

injunction sought was not in aid of the Court's jurisdiction. *Id.* at 1107. There is, however, a more recent Fifth Circuit case which also merits discussion. In *Green v. Carlson,* 649 F.2d 285 (5th Cir.1981), the Fifth Circuit, invoking its general supervisory power to control its docket, entered an injunction similar to the one requested in this case against the very same Clovis Carl Green. *Id.* at 287. Accordingly, any conflict that may exist in the Fifth Circuit must be reconciled here in favor of the more recent and relevant case of *Green v. Carlson.*

In the immediate case, we once again are confronted with a claim, described by the district court as having no basis in law or in fact and taken in bad faith, presented by a litigant whose avowed intent is to frustrate and harass our federal judicial system. See *Green v. Camper, supra,* 477 F.Supp. at 770–771. Green's track record both here and in other circuits is clearly one of blatant abuse of the courts. His harassment of the district court, as evidenced by the procedural history in this case, and his recent flurry of frivolous appeals to this Court inevitably result in delayed justice for other litigants in our system, increasingly congested calendars, and valuable time being wasted and lost as courts dispose of Green's ubiquitous lawsuits. The basis for the requested injunction, however, is not the impact Green's multitude of lawsuits have had upon the federal judicial system. Rather, the requested injunction is necessary in light of the utterly frivolous and often malicious nature of Green's pleadings and causes of actions. It is inconceivable to us that a court must subject itself to the type of attack which Green has mounted upon the federal judiciary without being able to say at some point that "enough is enough." It is clear that the proposed injunction, as an aid to our jurisdiction, is a proper exercise of our supervisory power and may be entered pursuant to the All Writs Act.

### III.

In an argument which need not long detain us, Green also argues that in order for

this Court to grant the proposed injunction, it will be necessary for it to make factual determinations, an occurrence traditionally beyond the purview of appellate courts. Green accordingly maintains that the proposed injunction should have originated in the district court, as opposed to the Court of Appeals.

It is true, as Green argues, that an appellate court ordinarily has no fact-finding ability. The creation of a factual record is an area normally within the province of the district courts. *Goland v. Central Intelligence Agency,* 197 U.S.App.D.C. 25, 607 F.2d 339, 371 (1978), certiorari denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Moreover, an appellate court typically will not consider facts that were not presented to the district court. *Rothenberg v. Security Management Co., Inc.,* 667 F.2d 958, 961 n. 8 (11th Cir.1982). It is recognized, however, that an appellate court may take judicial notice of matters which are so commonly known within the community as to be indisputable among reasonable men, or which are capable of certain verification through recourse to reliable authority. *United States v. Mendell,* 447 F.2d 639, 641 (7th Cir.), certiorari denied, 404 U.S. 991, 92 S.Ct. 535, 30 L.Ed.2d 542 (1971). See McCormick on Evidence, ch. 35, §§ 334–335 (1954). Among these matters of which a court may take judicial notice are its own court documents and records. *Bryant v. Carleson,* 444 F.2d 353, 357 (9th Cir.), certiorari denied, 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287 (1971). Furthermore, federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue. *St. Louis Baptist Temple v. F.D.I.C.,* 605 F.2d 1169, 1172 (10th Cir.1979); *Barrett v. Baylor,* 457 F.2d 119, 124 n. 2 (7th Cir. 1972).

These principles indicate that we clearly have the power to take judicial notice of Green's extensive record of litigation as well as the subject matter of his lawsuits. His filing history in both this and other courts is of public record and particularly relevant to the proposed injunction. The fact that Green has all but besieged the federal courts for the past several years is indeed a matter of public knowledge, of which we may properly take judicial notice. Accord, *Green v. White,* 616 F.2d 1054, 1055 (8th Cir.1980). Accordingly, this argument must fail.

### IV.

The final issue we shall address is Green's contention that the proposed injunction would abridge his constitutionally protected right of access to the courts.

It is established beyond doubt that prisoners have a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). The right to seek redress of one's grievances has been described as "the foundation of orderly government," *Chambers v. Baltimore & Ohio Railroad Co.,* 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907), and is said to have sprung from a variety of constitutional sources. The Due Process Clause of the Fourteenth Amendment (as well as the Fifth Amendment) is most often regarded as the source of the right. See *Truax v. Corrigan,* 257 U.S. 312, 332, 42 S.Ct. 124, 129, 66 L.Ed. 254 (1921); *Dreher v. Sielaff,* 636 F.2d 1141, 1143 (7th Cir.1980). The First Amendment is also spoken of in connection with the right to court access. See *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339 (1971); *NAACP v. Button,* 371 U.S. 415, 444, 83 S.Ct. 328, 343, 9 L.Ed.2d 405 (1963). The right of access to the courts has even been referred to in connection with the "Privileges and Immunities Clause" of Article IV, Section 2, of the Constitution. See *Chambers v. Baltimore & Ohio Railroad Co., supra,* 207 U.S. at 148, 28 S.Ct. at 35. Whatever its source, the right remains one which we must zealously and solicitously safeguard.

The right of access to the courts, however, has never been held to be absolute or unconditional, especially in the context of

prisoner litigation. For example, the Supreme Court has held that the government may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the applications for relief. *Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969). The Supreme Court has also rejected a claim that indigent defendants have a constitutional right to appointed counsel for discretionary appeals. *Ross v. Moffitt,* 417 U.S. 600, 616, 94 S.Ct. 2437, 2446, 41 L.Ed.2d 341 (1974). In essence, the right requires that a person's access to the courts be "adequate, effective, and meaningful." *Bounds v. Smith, supra,* 430 U.S. at 822, 97 S.Ct. at 1495. The touchstone is not total or unlimited access, but meaningful access. *Id.* at 823, 97 S.Ct. at 1495. See also *Knell v. Bensinger,* 489 F.2d 1014, 1017 (7th Cir. 1973).

 In the immediate case we fail to see how the proposed injunction would deny Green meaningful access to the courts. Green remains free to seek to proceed in the district court and to this Court on appeal. The requirement that he certify to the novelty of his claims (which is distinct from actually proving them) can hardly be described as burdensome and is necessary in light of the avalanche of pleadings, petitions and other papers of Green's that have deluged the courts. The injunction does not preclude or even unduly burden Green from submitting a new and nonfrivolous complaint; it merely requires that all of his future claims be original, an idea not at all inconsistent with traditional notions of res judicata.[8] Hopefully, in the future only original and nonfrivolous claims will be forthcoming from Green. The threat of contempt of court will no doubt be an added incentive for compliance with this injunction.

---

**8.** Green also contends that less restrictive alternatives than the proposed injunction are available to avoid impinging upon his right of access to the courts. Specifically, he argues that courts already have the authority to dismiss frivolous suits pursuant to 28 U.S.C. § 1915(d) and to impose damages and costs in certain instances. Green also notes that courts may

### V.

The Fifth Circuit has noted in a similar context that no one, rich or poor, is entitled to abuse the judicial process. *Hardwick v. Brinson,* 523 F.2d 798, 800 (5th Cir.1975). It is obvious that Clovis Carl Green, Jr. has attempted to do just that. Accordingly, in addition to dismissing Green's present appeal for failure to pay his docketing fee per Circuit Rule 26 and also for lack of a timely notice of appeal (see F.R.A.P. 4), pursuant to our supervisory authority we grant the Government's request for an injunction *in haec verba* as proposed by the Government (*supra,* p. 367). Such an injunction is being entered herewith.

---

require litigants to verify their pleadings per Rule 11 of the Federal Rules of Civil Procedure. These alternatives, however, already in existence, have obviously not been successful in deterring Green's litigiousness. Such being the case, we resort to the present method to stem Green's barrage of frivolous lawsuits.