George SASSOWER, Plaintiff–Appellant–Petitioner,

v.

AMERICAN BAR ASSOCIATION, et al., Defendants–Appellees.

Nos. 94–2070, 94–2145, 94–2300, 94–2301, 94–2537, 94–2647 and 94–8048.

United States Court of Appeals, Seventh Circuit.

Submitted July 8, 1994.

Decided July 25, 1994.

**734**

George Sassower, pro se.

Timothy A. Nelsen, John K. Lyons, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Mead Data Central, Inc.

Michael M. Conway, Robert R. Hall, Jr., Hopkins & Sutter, Chicago, IL, Robert T. Hall, Springfield, IL, for Dow Jones & Co., Inc.

James B. Burns, Office of U.S. Atty., Chicago, IL, for William H. Rehnquist.

Charles E. Ex, Asst. U.S. Atty., Crim. Div., Chicago, IL, for Janet Reno.

Janet Reno, pro se.

Charles E. Ex, Asst. U.S. Atty., Crim. Div., Michael M. Conway, Hopkins & Sutter, Timothy A. Nelsen, Skadden, Arps, Slate,

Meagher & Flom, Chicago, IL, for William T. Hart.

Before BAUER, EASTERBROOK, and ROVNER, Circuit Judges.

PER CURIAM.

More than a decade ago Puccini Clothes, Ltd., was liquidated. At the time of its dissolution George Sassower was a creditor. Sassower, a disbarred lawyer, believes that various other persons drained the firm's treasury, leaving him with unsatisfied debts. Ever since, he has waged a campaign of litigation against the supposed wrongdoers—and against the judges who decide the cases he has brought, the legal publishers that print the decisions, and so on. The current complaint names as defendants nine federal judges,[1] the Chief Judge of the Court of Appeals of New York, the Attorneys General of the United States and the State of New York, the American Bar Association, five publishers,[2] and numerous other persons and corporations Sassower has encountered in his crusade.

None of these defendants and transactions has anything to do with the Northern District of Illinois, where Sassower filed this suit. The only possible explanation for the choice of venue is that this circuit has yet to bar Sassower from filing additional suits. He has been chased out of his favorite forums, so now he is suing those judges elsewhere. The Second Circuit has restricted his ability to prosecute additional suits or complaints of judicial misconduct within its jurisdiction. *In re Sassower*, 9 F.3d 226 (2d Cir.1993) (no filings in lawsuits without prior grant of leave to file); *In re Sassower*, 20 F.3d 42 (2d Cir.Jud. Council 1994) (no filings without prior grant of leave from Chief Judge). A district court has entered a more sweeping injunction, barring Sassower from filing anywhere in the United States new

---

1. William H. Rehnquist, Chief Justice of the United States; Stephen G. Breyer, Chief Judge, United States Court of Appeals for the First Circuit; Jon O. Newman, Chief Judge, United States Court of Appeals for the Second Circuit, and his three predecessors in that office, Thomas J. Meskill, James L. Oakes, and Wilfred Feinberg; Judges Charles L. Brieant and Thomas P. Griesa of the United States District Court for the South-

ern District of New York; and Judge William G. Young of the United States District Court for the District of Massachusetts.

2. West Publishing Company, Mead Corporation, Lawyers Cooperative Publishing Company, New York Law Journal Company, and Dow Jones & Company.

suits connected with the Puccini failure. *Sassower v. Abrams,* 833 F.Supp. 253 (S.D.N.Y.1993). Other district and appellate courts have adopted restrictions of their own. E.g., *Sassower v. Abrams,* 1992 U.S.App. LEXIS 38245 (3d Cir.1992); *Sassower v. Whiteford, Taylor & Preston,* 1991 WL 136589, 1991 U.S.App. LEXIS 23476 (4th Cir. 1991); *Sassower v. Mead Data Central, Inc.,* 1993 WL 57469, 1993 U.S.App. LEXIS 9582 (6th Cir.1993); *Sassower v. Carlson,* 930 F.2d 583 (8th Cir.1991); *Sassower v. Barr,* 1993 WL 53188, 1993 U.S.App. LEXIS 4061 (D.C.Cir.1993). Even the Supreme Court of the United States has felt compelled to protect itself from Sassower's bombardment by withdrawing his privilege of proceeding *in forma pauperis. Sassower v. Mead Data Central, Inc.,* — U.S. ——, 114 S.Ct. 2, 126 L.Ed.2d 6 (1993) (requiring Sassower to prepay the docket fee and print his petitions in all future cases).

The injunction entered by the Southern District of New York in *Sassower v. Abrams* requires Sassower to desist. He may file new cases only on certifying that the complaint is not repetitious, and he must attach a copy of the injunction to the complaint in any other case he files. When commencing suit in the Northern District of Illinois, Sassower did not include the necessary certification (he could not; the claims are tired ones that have been paraded before many courts) and did not attach a copy of the injunction. He also did not bother to serve many of the defendants. The district court entered orders dismissing particular defendants after the time for service had expired, and Sassower started filing notices of appeal without waiting for the entry of a final decision. So far he has filed six notices of appeal in this case. He has not paid the docket fee for any of the six. As best we can make out, Sassower believes that Citibank, N.A., should pay the fees on his behalf, because Citibank obtained some of Puccini's assets. Sassower has peppered this court with motions—motions to disqualify opposing counsel, motions for stays, petitions for writs of mandamus, motions for summary reversal, motions to direct Citibank to turn over assets, and more. The "more" includes two bizarre filings that cannot be called motions and are apparently designed to edify us

about the depths to which the judicial system has sunk. One is titled "The Reno–Posner Fraud" and another "The Corruption of Chief Administrator Richard A. Posner". The latter accuses Chief Judge Posner of conspiring with Chief Judge Newman of the Second Circuit to deprive Sassower (and litigants in general) of justice. Like Sassower's other filings, these omit the factual predicate. He is long on conclusions and accusations but short on details: the barrage of filings does not identify a single inappropriate deed (indeed, does not mention *any* concrete act) by Attorney General Reno or any federal judge.

 Eventually the district judge learned about the injunction in *Sassower v. Abrams,* and on May 16, 1994, dismissed the complaint. Sassower's premature appeals are now properly before us, see Fed. R.App.P. 4(a)(2), and two of the appellees have moved for summary affirmance. That motion is granted, for three reasons. First, this litigation is barred by the injunction in *Sassower v. Abrams,* which is not subject to collateral attack in another district. *In re Joint Eastern & Southern Districts Asbestos Litigation,* 22 F.3d 755, 761–64 (7th Cir. 1994). Until stayed or set aside on appeal, an injunction must be obeyed. *Pasadena Board of Education v. Spangler,* 427 U.S. 424, 439–40, 96 S.Ct. 2697, 2706, 49 L.Ed.2d 599 (1976). Second, this suit is repetitious, defeated by principles of claim preclusion (res judicata). Third, venue is not proper in the Northern District of Illinois. None of the acts in question occurred in Illinois, only one of the defendants lives there, and the fact that some of the defendants are federal employees does not subject them to damages litigation throughout the United States. *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). (Sassower insists that he is suing the federal employees in their personal rather than official capacities.) Claims against some of the defendants are barred by additional doctrines, including judicial immunity and the *Rooker–Feldman* doctrine. See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Every claim

against every defendant is knocked out by multiple rules of law, so we need not be comprehensive.

■ Sassower's petitions for mandamus are equally frivolous. Another motions panel denied the first, No. 94–8042. The second, No. 94–8048, has come to us. Sassower seeks a writ compelling the district judge to grant relief against the American Bar Association. He contends that his proposed judgment against the ABA is "unopposed." (He wants the ABA to remove from its data base any reference to the fact that he has been disbarred and to treat as invalid all attorney discipline orders entered by the state courts of New York and the Second Circuit.) Because this suit is barred by the injunction in *Sassower v. Abrams,* however, none of the defendants was required to oppose—or even take notice of—Sassower's filings.

■ Both the defendants and the judicial system (which is to say, other litigants) are entitled to protection from Sassower's misuse of legal processes. We issued an order requiring Sassower to show cause why he should not be subject to another injunction. Instead of complying, Sassower treated us to bilious attacks on the chief judge of this circuit. On reflection, we believe that because Sassower is already subject to a comprehensive injunction, another is unnecessary. Instead we take four related steps to protect the targets of his campaign:

1. The clerks of the seven district courts within the Seventh Circuit, and the clerk of the court of appeals, will return unfiled any of Sassower's complaints, notices of appeal, and other papers that are not accompanied by the necessary filing fee. Like the Supreme Court, we believe that Sassower has forfeited his privilege of proceeding *in forma pauperis.* He may apply for that status in any criminal proceeding brought against him. In civil litigation he must pay his own way. This principle applies to the current appeals as well. The clerk will not accept any additional papers from Sassower until he has paid the docket fees.

2. Defendants in any civil litigation commenced by Sassower within the jurisdiction of this circuit may ignore his filings unless a judge explicitly orders them to respond. Instead of requiring Sassower to obtain leave to file—a step that consumes the very judicial time that we seek to conserve—we will treat his filings as presumptively frivolous. If Sassower, having paid the docket fee (see No. 1), can persuade a judge that his claims are colorable, then the judge will order a response. Otherwise the judge may terminate the litigation forthwith. Deadlines in the rules of civil procedure apply only after the court orders a response.

3. A judge within the Seventh Circuit who contemplates ordering a response on the ground that the complaint states a colorable claim will precede that order with a direction that Sassower post a $5,000 bond to cover costs—both normal costs under Fed.R.Civ.P. 54(d) and the potential for an award of sanctions under Fed.R.Civ.P. 11. Although no provision of the civil rules expressly authorizes such bonds, we have held that courts have the authority to order them when necessary to protect litigants and the judicial system. *Anderson v. Steers, Sullivan, McNamar & Rogers,* 998 F.2d 495 (7th Cir.1993). Sassower's parade of frivolous suits shows a high probability that he will be ordered to pay costs and sanctions; his effort to shift expenses to Citibank shows that collection will be difficult unless a bond is posted in advance. Hence this requirement. Unless Sassower posts the bond, the court will dismiss the case without requiring any adverse party to respond. If, however, the judge finds that the claim is stronger than merely colorable, the judge may waive the bond.

4. The clerk of this court will transmit copies of the relevant papers to the clerk of the United States District Court for the Southern District of New York and the United States Attorney for the Southern District of New York so that they may consider whether to initiate proceedings for contempt of the injunction entered in *Sassower v. Abrams.*

Sassower has been convicted of criminal contempt at least five times—four times in New York and once in New Jersey. The courts then enter more orders, which Sassower ignores. Sterner stuff may now be required.

AFFIRMED; PETITION FOR MANDAMUS DENIED.