Kataza TAIFA, Paul Komyatti, William Sampley, Mark S. Douglas, Aaron Isby, Kevin Sandifer, James E. Shropshire, John Charles Cole, Jr., Preston Gardner, Edward Broadus, James Thompson, Nolan McDandal, Robert Smith, Robert Jenkins, Richard Mumford, Tillman Morris, Michael Hegwood, Terrence Drain, Eric Malone, Michael Holland, Albert Estep, and Roosevelt Williams, Plaintiffs,

v.

Evan BAYH, in his individual and official capacity as Governor of the State of Indiana, James E. Aiken, in his individual and official capacity as Commissioner of the Indiana Department of Correction, Norman G. Owens, in his individual and official capacity as Director of the Classification Division of the Indiana Department of Correction, John Nunn, in his individual and official capacity as Deputy Commissioner of Oper-

ations of the Department of Correction, and Charles E. Wright, in his individual and official capacity as Director of the Maximum Control Complex of the Indiana Department of Correction, Defendants.

No. 3:92cv0429AS.

United States District Court, N.D. Indiana, South Bend Division.

Nov. 4, 1994.

See also 846 F.Supp. 723.

---

Richard A. Waples, Indiana Civ. Liberties Union, Hamid R. Kashani, Indianapolis, IN, for plaintiffs.

Aaron Isby, pro se.

Michael Holland, pro se.

Roosevelt Williams, pro se.

Carl L. Johnson, pro se.

Dyrone Henderson, pro se.

Jimmy Moorson, pro se.

Jeberekiah Eleazar Kelubai, pro se.

Kenneth Porter, pro se.

Tome L. Hailey, pro se.

Christopher Michael Miser, pro se.

Andrew Benroy Johnson, pro se.

Wayne E. Uhl, Office of Indiana Atty. Gen., Indianapolis, IN, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. INTRODUCTION

The Honorable Magistrate Robin D. Pierce was charged by this court with the management of an exceptionally voluminous and complicated class action lawsuit brought by prisoners confined at the Maximum Control Complex (hereinafter MCC) in Westville, Indiana. After much effort, the parties reached a settlement. On February 2, 1994 this court adopted that settlement as reported in the Magistrate's Recommendation and Report dated January 6, 1994. Judgement was entered by the Clerk of this court on February 15, 1994, but this case is not yet finished. Since the entry of judgment, over 316 documents have been filed with this court contesting, approving, or commenting on the settlement and its surrounding issues. One of the more tenacious commentators has been Mr. Aaron Isby, one of the original named plaintiffs. On October 24, 1994, this court received a report and recommendation from Magistrate Pierce regarding the litigious conduct of Mr. Isby. That report is reproduced in its entirety below.

### REPORT AND RECOMMENDATION

On January 21, 1994, Aaron Isby, an inmate at the Maximum Control Complex ("MCC") in Westville, Indiana, filed a motion objecting to a Report and Recommendation which had been issued by the undersigned recommending the approval of the Agreed Entry in this class action brought on behalf of present and future inmates at the MCC. According to Mr. Isby, "the illegal agreed entry" was "contrary to present laws of this countrie [sic] and US Constitution." Soon thereafter, on February 22, 1994, Mr. Isby filed a "Motion to Stay Judgment," in which he asserted that Chief Judge Sharp abused his discretion in approving the Agreed Entry concerning injunctive relief in this case. Judge Sharp denied Mr. Isby's motion to stay the judgment on March 4, 1994. Mr. Isby also attempted to appeal the Agreed Entry, but was denied leave to proceed *in forma pauperis* on March 23, 1994.

On March 24, 1994, Mr. Isby changed his approach. Instead of attacking the Agreed Entry as illegal and unconstitutional, he filed a "Motion to Enter Civil Contempt," in which he sought to hold "defendant Sharon Hawks" (who has never been a defendant in this case) in contempt "for her failure to abided [sic] by the mandates of the 'consent and decree' approved on February 15, 1994." On April 7, 1994, Mr. Isby filed another "Motion to Enter Civil Contempt," this time asserting that the defendants were refusing to abide by the Consent Decree by using profane language to antagonize and provoke prisoners, by refusing to provide prisoners with

tissue paper, and by "repeatedly using excessive brutal force against MCC prisoner [sic]." On April 8, 1994, Mr. Isby filed a motion to withdraw the record in this case "in order to adequately challenge [his] appeal presently pending before the Seventh Circuit Court of Appeals." On April 12, 1994, Mr. Isby filed another "Motion to Enter Civil Contempt," this time asserting that he had been "brutally beat" by corrections officers, "restrained in handcuffs, black box, belly chain, and leg irons," choked, "restrained to a bed without access to a toilet," and denied medical attention for "a busted right leg." Again, Mr. Isby asserted that "[d]efendants are violating the mandates in the 'consent and decree.'" On April 22, 1994, Mr. Isby filed another "Motion to Enter Civil Contempt," this time asserting that defendant Charles E. Wright was forcing him to wear a "hockey mask" whenever he was let out of his cell (because he allegedly spit on a guard) and that Wright was using the hockey mask to discourage Isby from taking recreation and showers, as well as legal calls from his attorney. On May 13, 1994, Mr. Isby filed still another "Motion to Enter Civil Contempt," this time assertion that Mr. Hamid Kashani, one of the attorneys for the inmate class, should be held in contempt because of his failure to "take immediate action to cease the unlawful acts of the defendants."

In an Order entered on May 16, 1994, Chief Judge Sharp denied all of Mr. Isby's motions for contempt. Undaunted, Mr. Isby filed a "Motion for Emergency Writ of Mandamus" on August 8, 1994, seeking "to compel Charles E. Wright to comply with the 'agreed entry.'" Thereafter, on September 15, 1994, Mr. Isby filed a "Notice of Contempt," advising that he intended to "file a motion to enter civil contempt against defendant Charles E. Wright for violating the 'agreed entry' injunctive order" in this case. On September 20, 1994, Mr. Isby filed another "Motion to Enter Civil Contempt," again challenging defendant Wright's practice of requiring him to wear a hockey mask "with masking tape at the mouth each time he is removed from his cell." Mr. Isby followed this up with a memorandum in support of his motion for civil contempt on October 4, 1994.

It is by now abundantly clear that Mr. Isby's practice of filing repetitive motions for contempt after his previous motions had been denied amount to vexatious conduct deliberately designed to harass and abuse the processes of the court. Under these circumstances, it is **RECOMMENDED** that any and all outstanding motions for contempt by Mr. Isby be **DENIED,** and that he be permanently barred from filing any other matter or pursuing any other action seeking to enforce or challenge the Consent Decree entered in this cause.

**ANY OBJECTIONS to this report and recommendation must be filed with the Clerk of courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988); *Video Views, Inc. v. Studio 21 Ltd.,* 797 F.2d 538 (7th Cir. 1986).**

Mr. Isby received a copy of Magistrate Pierce's Report and Recommendation (hereinafter R & R) and timely filed his "Objection to the U.S. Magistrate Report and Recommendation" (hereinafter "Objections") on October 28, 1994. Mr. Isby argues that the R & R is "unconstitutionally sound ... under the First Amendment ... and has no legal support...." Mr. Isby called Magistrate Pierce's finding of harassment and abuse "ludicrous" and cited cases indicating that the right to access the courts is fundamental. *See e.g., Adams v. Carlson,* 488 F.2d 619 (7th Cir.1973).

## II. DISCUSSION

■ This court agrees with Mr. Isby that "[i]t is now established beyond a doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). Whether a prisoner has the logistical ability to traverse the jurisdictional path depends upon his mental and financial re-

sources. Problems encounter by prisoners include limited access to law libraries, lawyers, copiers, and stationary, as well unaffordable filing fees. To help a prisoner cope with these sometimes seemingly insurmountable problems, courts require that inmates have reasonable access to law books, copiers, and such stationary and postage as may be necessary to enable the inmate to maintain his suit. Other inmates who have a better understanding of the law are allowed to act as "jail-house lawyers" and if a prisoner's financial condition is such that he is unable to pay the filing fees, the court may allow the inmate to proceed *in forma pauperis,* thus waiving the filing fee.

■ A quick survey of the case law reveals that although prisoners have the right to traverse the jurisdictional path to the courts, when the right is abused, a court may narrow or even barricade the path. A prisoner may erode the jurisdictional path by filing harassing and/or frivolous complaints and motions. Courts may prevent further erosion by utilizing the power granted under the All Writs Act which states: "The Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Although rare, the U.S. Supreme Court has invoked § 1651(a) on occasion to prevent abuse of the courts. "We ... direct the Clerk not to accept any further petitions from petitioner for extraordinary writs pursuant to 28 U.S.C. 1651(a)...." *In Re McDonald,* 489 U.S. 180, 181, 109 S.Ct. 993, 994, 103 L.Ed.2d 158 (1989). "The goal of fairly dispensing justice is compromised when the court is forced to devote limited resources to processing repetitious and frivolous requests." *In re Sindram,* 498 U.S. 177, 179–80, 111 S.Ct. 596, 597, 112 L.Ed.2d 599 (1991). The Seventh Circuit has also limited access in the face of harassing and frivolous filings. *Green v. Warden, U.S. Penitentiary,* 699 F.2d 364 (7th Cir.1983), *Sassower v. American Bar Association,* 33 F.3d 733 (7th Cir.1994).[1]

Seemingly hesitant to narrow the jurisdictional path, courts often instead alter the logistical obstacles in the jurisdictional path. One of the most popular methods is to modify, revoke, or enjoin the prisoner's right to proceed *in forma pauperis. In re McDonald,* 489 U.S. at 180, 109 S.Ct. at 993; *In re Sindram,* 498 U.S. at 177, 111 S.Ct. at 596; *Carter v. United States,* 733 F.2d 735 (10th Cir.1984) (reversing District Court's *in forma pauperis* injunction as too broad). Because most inmates have no money, a lack of permission to proceed *in forma pauperis* usually stops them in their procedural tracks. Other remedies include certification of new filings or the posting of a bond. *Depineda v. Hemphill,* 34 F.3d 946 (10th Cir.1994); *Sassower v. American Bar Ass'n,* 33 F.3d 733 (7th Cir.1994).

■ Mr. Isby acknowledges that courts may restrict access when filings are harassing or abusive, but he denies that his filings were meant to harass or abuse the processes of the court. Moreover, Mr. Isby argues that his filings were not nearly as egregious as the filings found in *In re Davis,* 878 F.2d 211 (7th Cir.1989) (31 cases over a four year period); *Cofield v. Alabama Public Service Comm.,* 936 F.2d 512 (11th Cir.1991) (106 cases); *Procup v. Strickland,* 792 F.2d 1069 (11th Cir.1986) (176 cases).

This court recognizes that Mr. Isby's filings are not nearly as numerous as those reported in the cases he cites; however, the correlation between the abuse caused and the remedy ordered in the above cases and in this case is proportional. The filings by the petitioners in the cases cited by Mr. Isby amounted to a broad abuse upon the courts. Thus, the courts issued broad orders restricting and prohibiting filing in several different areas. In the present case, Magistrate Pierce's recommendation is limited to the class action consent decree.

Although not controlling precedent, this court finds the analytic approach developed by the 9th Circuit in *De Long v. Hennessey,* 912 F.2d 1144 (1990) helps insure that Mr. Isby is given a reasonable solution with due

1. For a more complete listing of cases under § 1651(a) *See,* William T. Goglia, M.A., J.D., Annotation, *Authority of United States District court,*

*Under 28 USCS § 1651(a), to Enjoin, Sua Sponte, A Party From Filing Further Papers in Support of Frivolous Claim,* 53 A.L.R.Fed. 651 (1994).

process. The *De Long* court listed four requirements that must be met prior to enjoining any future filings. 1) Provide the litigant with notice and an opportunity to oppose the order before it is entered. 2) Provide an adequate record for review which includes a listing of all the cases and motions that led the court to conclude that an injunction was needed. 3) Make substantive findings as to the frivolous or harassing nature of the litigant's actions. 4) Tailor the injunction narrowly to closely fit the specific vice encountered. *Id.,* at 1146–1148. Concluding, the *De Long* the Court remarked:

> Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants. Nonetheless, orders restricting a person's access to the court must be based on adequate justification supported in the record and narrowly tailored to address the abuse perceived. We find such care is demanded in order to protect access to the courts, which serves as the final safeguard for Constitutional rights.

*Id.* at 1148–49.

This court finds that the first three requirements delineated above have been met. Notice was provided, Mr. Isby commented, and the Magistrate's Report and Recommendation provides the requisite record and findings. This court now examines the narrowness of the specific order of the Magistrate. If implemented, it would only slightly narrow the jurisdictional path to this court. In effect, this court would deny itself jurisdiction as to all filings by Mr. Isby that relate to the class action Consent Decree regardless of their legitimacy. Under the Magistrates recommendation, Mr. Isby would not be enjoined from filing *any* claims or motions in this court, he would only be enjoined from filing the claims and motions related to the present class action.

If Mr. Isby was still represented by counsel, such a restriction would be approved by this court without hesitation. The loss of counsel is a factor in this court's decision, but it is not a controlling factor. Mr. Isby was warned by his counsel that his *pro se* efforts were improper. Mr. Isby's loss of direct representation does not mean that Mr. Isby's interests are going to be ignored. As a member of the prison population at MCC (ie. one of the "others similarly situated"), Mr. Isby does have an interest in the proper execution of the class action settlement. Counsel for the remaining named plaintiffs are bound to raise mistreatment of Mr. Isby as a violation of the settlement. Thus, even if this court were to completely block Mr. Isby himself from filing any motions or complaints in connection with this class action, Mr. Isby's interests are still protected as the named plaintiffs and their counsel seek to enforce the settlement. Nevertheless, because Mr. Isby's litigiously maverick conduct has caused him to be abandoned even by his own counsel, this court is willing to first experiment with a less restrictive order that does not foreclose a potentially legitimate claim.

## III. CONCLUSION

This court fully understands the frustration and delay that Mr. Isby's prolific filings has caused the patient and careful magistrate to experience. Thus, this court does not rule out the magistrates recommendation as course of action for the near future. However, at this point this court chooses to alter Mr. Isby's logistical requirements to encourage Mr. Isby to think clearly and carefully about any future filings. Therefore, this court orders the following:

First, after considering all of Mr. Isby's motions currently pending before this court, this court now hereby **DENIES** all of said motions. Second, this court **ORDERS** that any and all future filings by Mr. Isby that have any connection whatsoever with the enforcement, content, or any other relationship to the consent decree be hereby accompanied by a signed and sworn affidavit that the issues raised in the filing have not been raised or addressed in any prior filings or orders of this court. A false or misleading affidavit shall be punished by contempt, monetary sanctions, or any other order as this court sees fit. Third, this court **ORDERS** that any future filings be accompanied by an updated listing of the name, number, date,

substance, and disposition of all previous filings by Mr. Isby (including those filed prior to this order) that relate to the class action. Satisfaction of these requirements will encourage Mr. Isby to carefully screen his filings and enable this court to quickly discern between legitimate and illegitimate filings. IT IS SO ORDERED.