**Lars Erik Gustav LINDSTROM, Petitioner–Appellant,**

v.

**Jerome F. GRABER, Warden, Respondent–Appellee.**

No. 99–2886.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 15, 1999.

Decided Feb. 1, 2000.

---

Anthony D'Amato (submitted), Northwestern University Legal Clinic, Chicago, IL, for petitioner–appellant.

Lori Lightfoot (submitted), Office of the U.S. Attorney, Civil Division, Chicago, IL, for respondent–appellee.

Before POSNER, Chief Judge, and CUDAHY and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

Mr. Lindstrom's unsuccessful efforts to avoid being extradited to Norway have precipitated a number of difficult questions. In 1997 a Norwegian court convicted him of fraud and sentenced him to prison. Before the sentence could be executed (indeed before the trial ended), he fled to the United States. The Norwegian court issued a warrant for his arrest and Norway, pursuant to its extradition treaty with us, asked the United States to extradite Lindstrom. As it was believed that he was living in Chicago, the matter was referred to the U.S. Attorney for the Northern District of Illinois, and was placed in the hands of Deputy U.S. Attorney Joan Safford, who is in charge of international affairs for the office, and she in turn assigned Assistant U.S. Attorney Lori Lightfoot to handle it. Lightfoot filed a complaint in the federal district

court in Chicago seeking a certification of extraditability authorizing the Secretary of State to permit Norway to take custody of Lindstrom. 18 U.S.C. § 3184; *In re Burt*, 737 F.2d 1477, 1481 n. 8 (7th Cir.1984); *United States v. Kin–Hong*, 110 F.3d 103, 109 (1st Cir.1997). At Lightfoot's request, pending issuance of the certificate and of a surrender warrant by the Secretary of State, a magistrate judge of the Northern District, pursuant to section 3184, issued a warrant for Lindstrom's arrest, and he was arrested on October 29, 1997—more than two years ago. In June of the following year, another Northern District magistrate judge issued the certification of extraditability together with an order of commitment directing that Lindstrom be placed in the custody of the U.S. Marshals Service "pending final disposition of this matter by the [U.S.] Secretary of State and the arrival of agents of Norway for the purpose of his return to Norway."

 Lindstrom filed a petition for habeas corpus (28 U.S.C. § 2241), alleging a variety of procedural irregularities that he argued should bar his extradition. Habeas corpus is the normal method of challenging an extradition order, such an order being unappealable. E.g., *DeSilva v. DiLeonardi*, 181 F.3d 865, 870 (7th Cir.1999); *In re Extradition of Drayer*, 190 F.3d 410, 412 n. 2 (6th Cir.1999); *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993). The district court denied relief to Lindstrom on May 14 of last year. He filed a notice of appeal on June 1, and on July 22 the district court granted his motion for a certificate of appealability. The motion was unnecessary, because such certificates are not required in habeas corpus cases brought solely under 28 U.S.C. § 2241. *Bush v. Pitzer*, 133 F.3d 455, 456 (7th Cir.1997); *Sugarman v. Pitzer*, 170 F.3d 1145 (D.C.Cir.1999) (per curiam); *Stringer v. Williams*, 161 F.3d 259, 261–62 (5th Cir.1998).

 Meanwhile, Lindstrom had on July 19 filed a second habeas corpus petition, this one arguing that the order of commitment which the magistrate judge had issued along with the certification of extraditability had lapsed because of delay in its execution. The argument was based on 18 U.S.C. § 3188, which authorizes the district court to order the release of the committed individual if he has not been removed from the United States within two months after the issuance of the order. *In re United States*, 713 F.2d 105, 108 (5th Cir.1983); *Barrett v. United States*, 590 F.2d 624, 626 (6th Cir.1978). Lindstrom's second petition (which incidentally has no possible merit, because the two-month period is tolled during proceedings challenging the extradition, *Eain v. Wilkes*, 641 F.2d 504, 524 n. 26 (7th Cir.1981); *Liberto v. Emery*, 724 F.2d 23, 25 n. 2 (2d Cir. 1983) (per curiam); *In re United States, supra*, 713 F.2d at 110 n. 4; *Barrett v. United States, supra*, 590 F.2d at 626) remains pending, as does his appeal from the denial of his first petition.

On August 6, the Deputy Secretary of State issued a surrender warrant pursuant to 18 U.S.C. § 3186, directing the U.S. Marshal for the Northern District of Illinois to hand Lindstrom over to such persons as Norway authorized to receive him. Norway was notified and sent two agents to Chicago, and the Marshals Service was informed that they would arrive on the eighteenth and take Lindstrom back to Norway the next day, August 19. The morning of the nineteenth Lindstrom's lawyer sought a stay of extradition from the district court, based on the second petition for habeas corpus. The court denied the stay no later than 12:45 p.m., and when the Marshals Service was notified of this a few minutes later, the process of transferring custody of Lindstrom to the Norwegian agents began. The marshal in charge of the transfer of custody was Deputy Marshal Ronald Randolph, and he directed another deputy marshal, Richard Walenda, to drive Lindstrom and the agents from the garage of the federal courthouse, to which Lindstrom and the

agents had been brought, to O'Hare Airport for a 5 p.m. flight to Norway.

At 2:20 p.m., roughly twenty minutes after the trio arrived at O'Hare, Lindstrom's lawyer filed a motion for an emergency stay of extradition with this court to allow him to seek a regular stay pending the decision of the appeal from the district court's denial of his first petition for habeas corpus. The motion for an emergency stay was referred to Judge Rovner, who granted it forthwith. At about 2:55, Assistant U.S. Attorney Lightfoot, who was in the federal courthouse on another case, was told by a member of this court's staff about the order granting the stay. She asked him whether she could speak to the staff attorney who was handling the matter; he told her she could not.

Although Lightfoot realized that Lindstrom was scheduled to depart from the United States at 5 o'clock, she did not immediately notify this court of that fact. After consultation with Safford and Randy Toledo, a supervising attorney in the Justice Department's Office of International Affairs, Lightfoot filed with this court at 4:40 p.m. a motion to reconsider the grant of the stay of extradition. The motion mentioned Lindstrom's imminent departure. Judge Rovner received the motion shortly before 5 p.m. and denied it a few minutes later. The plane took off, with Lindstrom on it, at 5:45.

Deputy Marshal Randolph learned of the stay shortly after 3 p.m., while Lindstrom was at O'Hare, and he called Lightfoot for guidance. She consulted Toledo and Safford, and they decided that the extradition had been complete when Lindstrom had been presented to the Norwegian agents in the garage of the federal courthouse, and therefore that the stay was moot. So Randolph did not attempt to stop the embarkation of Lindstrom.

The matters relating to the appeal, stay, and extradition were referred to this panel for decision, and we asked the parties to brief several issues; the State Department has also submitted its views on one of the issues (whether Lindstrom's appeal is moot). We also ordered Lightfoot and Randolph to show cause why they should not be disciplined, or subjected to contempt proceedings, for failure to comply with the stay that Judge Rovner had issued.

There are three issues before us: whether Lindstrom's appeal (the appeal from the denial of his first petition for habeas corpus, the appeal filed on June 1) is moot; whether the stay was violated; and whether (and, if so, what) formal disciplinary proceedings should be instituted against Lightfoot, Randolph, or both.

■ The appeal is indeed moot. The object of the habeas corpus proceeding, a proceeding directed against the warden of the American jail in which Lindstrom was being held, and of the appeal is, or rather was, to prevent Lindstrom from being sent back to Norway; he has been sent back; and so he has nothing to gain from the further prosecution of the appeal. E.g., *Calderon v. Moore*, 518 U.S. 149, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996) (per curiam); *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir.1998); *LoBue v. Christopher*, 82 F.3d 1081, 1082 n. 1 (D.C.Cir.1996). This assumes, but surely correctly, that there is no legal basis for our ordering Norway to surrender Lindstrom back to us, since we have no jurisdiction over the warden of the Norwegian prison in which he's incarcerated. *Subias v. Meese*, 835 F.2d 1288 (9th Cir.1987); see also *Hanahan v. Luther*, 760 F.2d 148, 151 (7th Cir.1985). (Nor is that warden or any other Norwegian official a respondent in this proceeding.) The stay that Judge Rovner granted is moot too, and for the same reason, so we do not pause to consider whether it should have been granted. Clearly, however, the stay was within the power of a judge of this court to issue under Fed. R.App. P. 8 and the All Writs Act, 28 U.S.C. § 1651; *Lightfoot v. Walker*, 797 F.2d 505 (7th Cir.1986); *Green v. Warden*, 699 F.2d 364, 367–68 (7th Cir.1983), and would have been

even if this court's jurisdiction over Lindstrom's appeal had been merely potential rather than, as it was, actual, since the notice of appeal had been filed. E.g., *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *Green v. Warden, supra,* 699 F.2d at 368; *Michael v. INS,* 48 F.3d 657, 664 (2d Cir. 1995). But the question whether the stay was violated is not moot, because it bears on the question of discipline.

Whether the stay was violated depends primarily on how the order granting it is interpreted and, if it is interpreted narrowly, on when extradition occurs—is it when custody is handed over to the agents of the requesting nation in the United States (a transfer expressly authorized by 18 U.S.C. § 3186) or when the person extradited has been removed from our territorial limits, and if it is the former (as it may be, see Extradition Treaty, June 9, 1977, U.S.-Norway, art. 14(2), 31 U.S.T. 5619; *Terlinden v. Ames,* 184 U.S. 270, 289, 22 S.Ct. 484, 46 L.Ed. 534 (1902); M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 768 (3d ed.1996), though that we need not decide), when exactly was custody transferred in this case? If the order is interpreted broadly, there is no question that it was violated. But assuming as we do that a narrow interpretation is possible, and bearing in mind that our focus from this point forward is on whether discipline is warranted for violating the stay, the pertinent question is whether the stay was violated even if the government officers interpreted it narrowly, as they could do without inviting punishment for contempt of court.

The government argues that the Marshals Service transferred custody over Lindstrom to Norway in the garage of the federal courthouse. We have our doubts, and not only or primarily because the papers documenting the transfer were not executed until later—perhaps (it is unclear) after Judge Rovner issued the stay. Walenda remained with the Norwegians, who did not speak fluent English, and

Lindstrom until they boarded the aircraft, his role being, in the words of his affidavit, "to act as a liaison with other law enforcement officers or airline personnel on behalf of the Norwegian agents in the event that their authority to escort their prisoner on U.S. territory was questioned"—as well it might be. Was Walenda assisting the Norwegian agents in maintaining custody of Lindstrom, or was he really in control until they boarded the plane? Cf. *United States v. Marzano,* 537 F.2d 257, 269–71 (7th Cir.1976); *United States v. Behety,* 32 F.3d 503, 510–11 (11th Cir.1994); *United States v. Peterson,* 812 F.2d 486, 490 (9th Cir.1987); *Restatement (Third) of the Foreign Relations Law of the United States* § 433, comment a (1987).

We need not decide this question; nor need we decide whether Rule 23(a) of the Federal Rules of Appellate Procedure, which forbids transferring the custody of a prisoner during an appeal in his habeas corpus case without the approval of the appellate court here neither sought nor granted, was violated. There is an anterior question—the *meaning* of the stay. Understandably concise and summary in light of the time factor, the order granting the stay said only that the court "hereby temporarily STAYS petitioner's extradition pending resolution of petitioner's emergency motion to stay extradition [pending appeal]" and that the respondent shall respond to that motion by August 26. As it was obviously the purpose of the motion for a stay of extradition to maintain jurisdiction over Lindstrom's challenges to his extradition, and as this purpose could not be carried out if Lindstrom were returned to Norway, the order could mean only that he was not to be shipped out of the United States, even if extradition had already occurred. Lightfoot herself interpreted the stay order in the broad way that we have suggested, for in moving Judge Rovner to lift the stay she said that to give effect to the stay "would require the United States government to take Lindstrom back into custody."

Against its own agent's interpretation the government argues that the federal judiciary lost jurisdiction over Lindstrom when the agents took custody of him. This is unconvincing. The question when extradition occurs and when the courts of the jurisdiction requested to extradite lose all physical power over the person extradited are separate. If the Norwegian agents had begun pulling Lindstrom's fingernails off his fingers in the car to O'Hare, or if it were discovered that they had the wrong Lars Lindstrom, or if they informed him in the departure lounge that they were going to kill him as soon as the plane entered Norwegian airspace, our law enforcement authorities would not be barred from intervening on the ground that the space occupied by the two agents and Lindstrom before they left the United States was a little corner of Norway. See *Restatement, supra*, § 432(2) and comment b.

Although we do not think the stay was moot when issued on the theory that it merely stayed Lindstrom's extradition and he had already been extradited, the legal and interpretive issues are sufficiently muddied that we do not think it would be proper to punish anyone for having violated the stay or to institute contempt proceedings. That ends any disciplinary issue with regard to Deputy Marshal Randolph. He cannot be faulted for having bowed to the advice of the Justice Department's lawyers that the stay was moot. There is no suggestion that he was acting unreasonably or in bad faith, and so no evidence of willfulness that would warrant punishment. *United States v. Cheek,* 3 F.3d 1057, 1061 (7th Cir.1993); *United States v. Monteleone,* 804 F.2d 1004, 1011 and n. 10 (7th Cir. 1986); *Los Angeles Police Protective League v. Gates,* 907 F.2d 879, 887–88 (9th Cir.1990). We also do not think disciplinary proceedings against Toledo or Safford warranted either. Their interpretation of the stay may well have been erroneous, but misinterpretation is not misconduct; again there is no evidence of willfulness on their part.

The disciplinary issue with regard to Assistant U.S. Attorney Lightfoot is more difficult. While she and her superiors were entitled to take the position that the stay was moot when issued because the Norwegian agents had taken custody of Lindstrom, she owed it to this court and to Lindstrom to advise his lawyer and Judge Rovner *immediately* of her interpretation, so that the judge could issue a further order if she decided that Lindstrom ought not to be returned to Norway. Judge Rovner, had she known that Lightfoot deemed the stay order moot on the ground that it was merely a stay of extradition rather than a stay of actual removal from the United States, might have issued an order expressly forbidding his departure and thus eliminating the issue of mootness. Such an order might be wise or unwise, legally sound or legally unsound— questions we do not decide—but the power to issue such an order, an order designed merely to permit the court to consider colorable issues within its jurisdiction before they become moot, unquestionably lies in the judges of this court and not in the Department of Justice. Lightfoot made it impossible for the judge to exercise this power. It is as if a state's lawyer, having received a stay of execution directed to the warden of a different prison from the one in which the prisoner was awaiting execution, failed to apprise the court of its mistake until it was too late to stop the execution from taking place.

Lightfoot points out that she had been told by an employee of this court not to talk directly to the court's staff attorney who was assisting Judge Rovner; ex parte contacts between lawyers and judicial personnel on substantive matters are, of course, normally forbidden. There was nothing, however, to prevent her from advising the court in writing (with a copy to Lindstrom's lawyer) that the stay was ineffectual. She learned of the stay before 3, and if she had gotten word to the court by

4 a further order could have been issued before 5.

Having narrowed the disciplinary issue, we hereby issue our formal notice of disciplinary proceeding under Fed.R.App.P. 46(c). Attorney Lightfoot shall have thirty days from the date of this order to show cause why she should not be disciplined for conduct unbecoming a member of the bar of this court; she may, of course, as the rule provides, have an oral hearing upon request.

The appeal and stay are dismissed as moot, the order to Deputy Marshal Randolph to show cause is discharged, and a Rule 46(c) disciplinary proceeding is instituted against Assistant U.S. Attorney Lightfoot.

So ORDERED.